**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF NEW YORK

Case number *(if known)* _____    Chapter    **11**

☐ Check if this an
amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy
04/20

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | **2 BOWERY HOLDING LLC** |
| 2. | **All other names debtor used in the last 8 years** <br> Include any assumed names, trade names and *doing business as* names | |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **83-1053152** |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| **C/O RK Consultants, LLC** <br> **1178 Broadway, 3rd Fl. #1505** <br> **Attn:  Brian Ryniker** <br> **New York, NY 10001** | |
| Number, Street, City, State & ZIP Code | P.O. Box, Number, Street, City, State & ZIP Code |
| **New York** | **Location of principal assets, if different from principal place of business** <br> **2 Bowery New York, NY 10013** |
| County | Number, Street, City, State & ZIP Code |

5. **Debtor's website** (URL)  _____

6. **Type of debtor**

■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify:  _____

| Debtor | **2 BOWERY HOLDING LLC** | Case number (*if known*) | |
|---|---|---|---|
| | Name | | |

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor.
   See http://www.uscourts.gov/four-digit-national-association-naics-codes.

   5311

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

■ Chapter 11. *Check all that apply*:

  ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

  ☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

  ☐ A plan is being filed with this petition.

  ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

  ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

  ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**
If more than 2 cases, attach a separate list.

■ No.

☐ Yes.

| District | | When | | Case number | |
|---|---|---|---|---|---|
| District | | When | | Case number | |

Debtor  **2 BOWERY HOLDING LLC**                                        Case number *(if known)* _____
        Name

---

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

■ No
☐ Yes.

List all cases. If more than 1, attach a separate list

| | | | |
|---|---|---|---|
| Debtor | _____ | Relationship | _____ |
| District | _____ When _____ | Case number, if known | _____ |

---

**11. Why is the case filed in *this district*?**   *Check all that apply:*

■ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

■ No
☐ Yes.   Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** *(Check all that apply.)*

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
   What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
                          Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No
☐ Yes.   Insurance agency _____
         Contact name _____
         Phone _____

---

■ **Statistical and administrative information**

**13. Debtor's estimation of available funds**   .   *Check one:*

■ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

---

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

---

**15. Estimated Assets**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ■ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

---

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ■ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |

---

Debtor   **2 BOWERY HOLDING LLC**                                           Case number (*if known*) _____
         Name

☐ $50,001 - $100,000          ☐ $10,000,001 - $50  million      ☐ $1,000,000,001 - $10 billion
☐ $100,001 - $500,000         ☐ $50,000,001 - $100 million      ☐ $10,000,000,001 - $50 billion
☐ $500,001 - $1 million       ☐ $100,000,001 - $500 million     ☐ More than $50 billion

| Debtor | **2 BOWERY HOLDING LLC** | Case number (*if known*) | |
|---|---|---|---|
| | Name | | |

## Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **March 31, 2022**
MM / DD / YYYY

**X** **/s/ Brian Ryniker, Member**                    **Brian Ryniker, Member**
Signature of authorized representative of debtor        Printed name

Title   **RK Consultants, Independent Manager**

**18. Signature of attorney**

**X** **/s/ FRED B. RINGEL**                    Date **March 31, 2022**
Signature of attorney for debtor                        MM / DD / YYYY

**FRED B. RINGEL**
Printed name

**ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.**
Firm name

**875 THIRD AVENUE**
**New York, NY 10022**
Number, Street, City, State & ZIP Code

Contact phone   **(212) 603-6300**        Email address

Bar number and State

**RESOLUTION TO FILE CHAPTER 11 REORGANIZATION**

**BY THE INDEPENDENT MANAGER OF**

**2 BOWERY HOLDING LLC**

The undersigned independent manager ("**Independent Manager**") of 2 BOWERY HOLDING LLC, a New York limited liability company ("**Company**"), acting pursuant to New York Limited Liability Company Law and the Operating Agreement of the Company hereby adopts the following resolutions:

**WHEREAS**, the Company is unable to satisfy its current financial obligations to its creditors and Independent Manager having received, considered, and had discussions with counsel and other professionals; and

**WHEREAS**, it appearing in the business judgment of the Independent Manager that it is in the best interest of the Company and its creditors to file a Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code ("**Bankruptcy Code**"); it is hereby

**RESOLVED**, that the Company initiate a case ("**Case**") under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York; and it is further

**RESOLVED**, that subject to Bankruptcy Court approval, the Company is hereby authorized to obtain debtor-in-possession financing from Double Bowery Funding LLC or its affiliate, or such other lender offering better terms for debtor-in-possession financing; and it is further

**RESOLVED**, that, the actions of the Independent Manager shall always be in accordance with the Operating Agreement of the Company and any subsequent amendments thereto; and it is further

**RESOLVED**, that the Company is authorized to employ and retain the following professionals to assist it in the bankruptcy process, subject to bankruptcy court approval: Robinson Brog Leinwand Greene Genovese & Gluck, P.C., as  bankruptcy counsel for the Company; and Rosewood Realty Group, as real estate sale broker.

**IN WITNESS WHEREOF**, the undersigned Manager has executed this consent as of March 31, 2022.

**2 BOWERY HOLDING LLC**

Brian Ryniker, RK Consultants LLC
Independent Manager

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

                              Chapter 11

In re:

**2 BOWERY HOLDING LLC and**       Case No.:  22-_____ and
**26 BOWERY LLC**,                       22-_____

                         (Joint Administration Pending)

                 Debtors.

---------------------------------------------------------X

## DECLARATION PURSUANT TO LOCAL RULE 1007-2

    **Brian Ryniker**, hereby declares under penalty of perjury that the following statements are true and correct:

    1.    I am a member of RK Consultants, LLC ("RKC"), the manager of 2 Bowery Holding LLC ("2 Bowery") and 26 Bowery LLC ("26 Bowery," and together with 2 Bowery, "Debtors") and, unless otherwise specified, am fully familiar with the facts set forth herein.

    2.    I submit this declaration in accordance with Local Bankruptcy Rule 1007-2 in support of the Debtors' filing of  a voluntary petition under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").

    3.    I have instructed the Debtors' proposed counsel, Robinson Brog Leinwand Greene Genovese & Gluck P.C. to file a motion for joint administration of these cases. Therefore, this Rule 1007-2 Declaration addresses issues common to both 2 Bowery and 26 Bowery.

    4.    2 Bowery is the owner of the real property and improvements located at 2 Bowery, New York, New York ("2 Bowery Property").  26 Bowery is the owner

of the real property and improvements located at 26 Bowery, New York, New York

("26 Bowery Property").  Both the 2 Bowery Property and 26 Bowery Property are

mixed-use commercial properties located in Manhattan's Chinatown neighborhood.

5.    On April 26, 2019, the Debtors, as borrowers, executed a mortgage loan

agreement (" Senior Loan") in the original principal amount of $8,200,000.00 with

Double Bowery Funding LLC ("Senior Lender") in its capacity as lender.

Contemporaneously, the Debtors granted Senior Lender a mortgage on the 2

Bowery Property and 26 Bowery Property and security interest in virtually all of

the Debtors' personal property and other collateral specified in the security

agreement and filed UCC-1.  The Debtors are jointly and severally liable with

respect to the Senior Loan.  The Senior Loan has since matured and is in default.

6.    On April 26, 2019, the Debtors, entered into a loan in the principal

amount of $400,000.00 ("Mezz Loan"), which Loan is currently held by Bowery Mezz

LLC ("Mezz Lender" and, collectively with the Senior Lender, "Lenders") and is

evidenced by that certain $400,000.00 Promissory Note dated April 26, 2019 ("Mezz

Note"), secured by and pursuant to, among other things that certain General

Security Agreement dated as of April 26, 2019 ("Mezz Agreement"; and together

with the Mezz Note, "Mezz Loan"),  those certain Membership Interest Pledge and

Security Agreements dated as of April 26, 2019 (collectively, "Pledge Agreements")

made by Chouk Ng, Wilson Ng, and Steven Ng (collectively, "Pledgors") to the Mezz

Lender, and that certain Guaranty of Payment dated as of April 26, 2019

("Guaranty") made by Chouk Ng, Wilson Ng, and Steven Ng to the Mezz Lender.

The Mezz Note, Mezz Agreement, Pledge Agreement, Guaranty, and all other documents evidencing and securing the aforementioned instruments are hereinafter referred to as the "Mezz Loan Documents." The Mezz Loan has matured and is in default. A copy of 2 Bowery's Mezz Note and Pledge Agreement are attached as **Exhibit A** (the terms of 26 Bowery's Mezz Note and Pledge Agreement are identical to 2 Bowery, other than the name of the borrower)

7.      Pursuant to the Pledge Agreements, the Pledgors have pledged to the Mezz Lender, and the Mezz Lender has a perfected security interest in, the Collateral (as defined in the Pledge Agreements) consisting of, among other assets, all membership interests in the Debtors represented by those certain limited liability company certificates of 2 Bowery and 26 Bowery, and all Management Rights (as defined in the Pledge Agreements) of the Debtors.

8.      In July 2020, as part of a forbearance agreement ("Forbearance Agreement"), the Debtors, Pledgors, and Guarantors executed a waiver of claims and release in favor of the Lenders and affiliated parties wherein they acknowledged and agreed that:

> they have no offsets, defenses, claims, or counterclaims against the Lender, Lender's affiliates, member of Lender or any of its affiliates and agents, or the such parties' officers, principals, directors, employees, attorneys, representatives, predecessors, successors, and assigns (collectively, the "Lender Parties") with respect to the duly executed Loan Documents, the Land Loan, the Mezz Loan, and the Obligations and facts and circumstances in connection therewith, including, without limitation, the Existing Loan Defaults, or otherwise, and that if the Borrower, Guarantor, now have, or ever did have, any offsets, defenses, claims, or counterclaims against the Lender Parties, whether known or unknown, at law or in equity, from the beginning of the world through this date and through the time of execution of this Agreement, all of them are hereby expressly WAIVED, and the

Borrower, Guarantor, each hereby RELEASE the Lender Parties from any liability therefor.

9.     As of the date hereof, certain Event(s) of Default exist under the Mezz Loan Documents for, among other things, failure to pay off the Mezz Loan by the Maturity Date of May 1, 2021.  In addition, pursuant to, that certain letter dated July 1, 2021, Debtors were notified that certain events of default exist in connection with the Senior Loan, which Senior Loan is cross collateralized with the Mezz Loan pursuant to Section 7(k) of the Pledge Agreements.

10.     On September 15, 2021, the Senior Lender commenced a mortgage foreclosure action in the Supreme Court, New York County, Captioned Double Bowery Funding LLC, Plaintiff v. 2 Bowery Holding LLC, 26 Bowery LLC, et al, Defendants, Index No. 850220/2021 ("Senior Lender Foreclosure Action"). By virtue of these Chapter 11 filings, the Senior Lender Foreclosure Action is stayed.

11.     On March 24, 2022, a Temporary Receiver was appointed in the Senior Foreclosure Action ("Receiver"). Notice is being given to the Receiver that he is to cease any activity relating to the Debtors and turnover to the Debtors and funds, books and records, or other materials relating the Debtors to Declarant.

12.     On March 31, 2022, Mezz Lender exercised its rights pursuant to Section 6 of the Pledge Agreements to exercise the Management Rights under Section 2(a) of the Pledge Agreements to, among other things, vote with respect to the Collateral and manage the affairs of Borrower and to exercise any election including,  the filing of any petition for reorganization or dissolution of the

Borrower, and the exercise of the Borrower's rights as debtor-in-possession in the event the Borrower files a petition under Title 11 of the United States Code).

13.    In accordance with its rights under the Pledge Agreement, Mezz Lender amended the Amended and Restated Limited Liability Company Operating Agreement as in effect on the date hereof to appoint Declarant as the Independent Manager of the Debtors with complete power and authority to manage and operate the Debtors, including, without limitation, the right to file any petition for reorganization or dissolution of the Debtors, and exercise the Borrower's rights as debtor-in-possession in the event the Independent Manager causes the Borrower to file a petition under Title 11 of the United States Code ("Amended Operating Agreement").   A copy of the Debtors' Amended Operating Agreements are attached as **Exhibit B**.

14.    In the exercise of its duties, the Amended Operating Agreements makes clear that the Independent Manager shall at all times act in a fiduciary capacity and exercise appropriate fiduciary duties that are in the best interests of the estate and all of its stakeholders in accordance with applicable law of the State of New York, and in the event of a filing of a case under Chapter 11, of Title 11 of the United States Code.

15.    By letter dated March 31, 2022, Mezz Lender informed the Debtors' members that because of continuing defaults under the Senior Loan and Mezz Loan, the Mezz Lender was exercising its rights under the Pledge, including among other things, the right to vote the Debtors' membership interests and to manage the

Debtors, including the right to file a chapter 11 case for each entity. Mezz Lender also made a demand for the Debtors' books and records to be delivered to it.

16.     To satisfy the Debtors' creditors, the Debtors intend to sell the 2 Bowery Property and 26 Bowery Property pursuant to the Bankruptcy Code to satisfy the claims their respective creditors.

17.     Because of the Debtors' default under the Loan and Mezz Loan and the Mezz Lender's exercise of its rights under the Pledge and transfer of managerial duties to RKC, the Debtors are currently not in possession of its books and records which are still under control of the Debtors' members or their agents and affiliates. Thus, RKC cannot presently file, among other things, a complete and accurate list of 20 largest unsecured creditors, schedules, and statement of financial affairs.  In the event the Debtors' members do not voluntarily turn over the Debtors' books and records in a timely fashion, the Debtors will file an application under Bankruptcy Rule 2004 to subpoena the Debtors' books and records from the members and to depose them to obtain the information needed to file a complete set of schedules and statement of financial affairs.  The Debtors will  also file a motion to extend its deadline to files its schedules and statement of financial affairs to facilitate this process and so that upon receipt of its books and records and other financial information, the Debtors will have sufficient time to review all information and complete its schedules and statement of financial affairs.

18.     Upon information and belief, no pre-petition committee was organized prior to the Order for relief.

19.    Upon information and belief, because the Receiver was only recently

appointed, no property of the Debtors is in the possession and control of a receiver.

Dated: March 31, 2022

                              2 BOWERY HOLDING LLC
                              BY:  RK CONSULTANTS, LLC,
                              INDEPENDENT MANAGER


                              By:/s/ Brian Ryniker
                              BRIAN RYNIKER
                              MEMBER

                              26 BOWERY LLC
                              BY:  RK CONSULTANTS, LLC,
                              INDEPENDENT MANAGER


                              By:/s/ Brian Ryniker
                              BRIAN RYNIKER
                              MEMBER

# **EXHIBIT A**

# PROMISSORY NOTE

$400,000.00

As of April 26, 2019
New York, New York

FOR VALUE RECEIVED, the undersigned, **2 BOWERY HOLDING LLC** with offices c/o Wilson Ng, 26 Bowery, 5th Floor, New York, New Yok 10013 and **26 BOWERY LLC** with offices c/o Wilson Ng, 26 Bowery, 5th Floor, New York, New Yok 10013 (collectively, the "Borrower"), agrees to pay to **BOWERY MEZZ LLC** with offices c/o Hirshmark Capital LLC, 15 West 26th Street, Suite 901, New York, New York 10010 (the "Lender"), the principal sum of **FOUR HUNDRED THOUSAND AND  XX/100 ($400,000.00) DOLLARS**, on May 1, 2021 (the "Maturity Date"), with interest thereon to be computed at the rate of ten percent (10.00%) per annum until April 30, 2020 payable by interest only and thereafter interest shall accrue at the greater of (i) ten percent (10.00%) per annum or (ii) the Wall Street Journal Prime Rate plus four and a half percent (4.50%) per annum adjusting as of May 1, 2020 until the Maturity Date.  Interest in the amount of $555.56 from the date hereof through April 30, 2019 has been paid upon execution of this Note. Commencing on (a) June 1, 2019 and on the first day of each and every month thereafter until and including May 1, 2020 monthly payments in the amount of $3,333.34 shall be due and remitted by Maker (subject to the reconciliation as set forth below), and (b) June 1, 2020 and on the first day of each and every month thereafter until and including April 1, 2021 monthly payments at the then adjusted rate shall be due and remitted by Maker (subject to the reconciliation as set forth below). On the Maturity Date, the entire unpaid balance of principal and interest shall be due and payable.

Interest shall be computed based upon a 360 day year and the actual number of days elapsed. In the event that any payment does not factor into the payment any month that is less than or more than thirty (30) days, such additional sums shall be paid upon demand but in no event later than the Maturity Date, or the Extended Maturity Date, as applicable.

Upon the happening of any of the following events:

1.      Default in the payment of any installment of principal or interest for more than ten (10) days after its due date;

2.      Any default or any event constituting a default hereunder, under the terms of the Pledge Agreements (as hereinafter defined), the Guaranty (as hereinafter defined), the general security agreement of even date herewith executed by the Borrower (the "Security Agreement") (as any of said agreements may be hereafter modified, amended or supplemented) or any instrument evidencing or given as or forming part of the security or collateral for this Note or any guaranty thereof (collectively, the "Loan Documents"), beyond any applicable notice and cure period, all the covenants and provisions of which are hereby made part of this Note. Each or any default or Event of Default under this Note, the agreements or any one or more of the Loan Documents shall be an Event of Default hereunder;

3.      The undersigned or any guarantor of this Note shall (a) apply for or consent to the appointment of a receiver, trustee or liquidator for all or a substantial part of its or his

property, or if one is appointed and not discharged within sixty (60) days of such appointment; (b) admit, in writing, an inability to pay its or his debts as they mature; (c) make a general assignment for the benefit of creditors; (d) be adjudicated a bankrupt or insolvent; (e) file a voluntary petition in bankruptcy, or a petition or answer seeking reorganization or an arrangement with creditors, or an answer admitting the material allegations of a petition filed against it or him in any such proceeding;

4.     Judgment for the payment of money shall be rendered against the undersigned or any guarantor, any tax deficiency notice or lien by any governmental authority shall be filed against the undersigned or any guarantor, and the same shall not be effectively stayed and shall not be paid, bonded, released and discharged within sixty (60) days after entry;

then, and in any such event, the entire principal sum of this Note with interest shall immediately become due and payable at the option of the holder hereof, without presentment, demand, protest, notice of dishonor or default or notice of protest, or notice of any kind, all of which are hereby expressly waived, anything contained herein to the contrary notwithstanding.

If the unpaid principal balance shall not be paid when due, either at maturity, by acceleration or otherwise, interest thereon or on any judgment otherwise obtained with respect thereto shall thereafter accrue and be payable at the rate of twenty four percent (24.00%) per annum from the sooner to occur of (i) the maturity date, or (ii) the occurrence of the first event of default which could give rise to acceleration until the date of payment, but this provision shall not be deemed a consent or an agreement on the part of the holder of this Note to extend the time of payment of the principal hereof.

Upon the occurrence and during the continuance of any default hereunder or under any other instrument given as or forming part of the security or collateral for this Note, the Holder or any holder of this Note shall be entitled to receive and the Maker shall be obligated to pay interest on the unpaid principal sum at the rate of twenty four percent (24.00%) per annum. This clause shall not be construed as a waiver of any right or remedy accruing to the Holder or any holder by reason of any said event of default or an agreement or privilege to extend the date of payment of any principal or interest due hereunder.

If any holder of this Note at any time pays or advances any monies to protect the security provided under any security agreement, lease or other collateral securing this Note, interest thereon shall accrue and be payable at the rate of twenty four percent (24.00%) per annum from the date of payment and the undersigned agrees to repay the monies so paid or advanced with interest as aforesaid on demand and the same shall be added to the indebtedness hereunder.

At the option of the holder hereof, the maker will pay a "late charge" of six ($.06) cents for each dollar of each payment in arrears for more than five (5) days to cover the extra expense of handling delinquent payments.

In the event the holder hereof employs counsel to (i) collect this Note or any interest thereon or any other obligation owed by the maker, or (ii) realize on any other collateral securing this Note, or (iii) defend the lien of any other collateral, then in any such event the maker agrees to additionally

pay to the holder of this Note the reasonable fees of the attorney for the holder hereof (but in any event no less than $5,000.00 which the Maker agrees is reasonable), which sum shall be included in any judgment or otherwise and shall be in addition to the recovery of costs, disbursements and allowance otherwise recoverable in such action pursuant to the applicable provisions of law.

Prepayment of this Note is permitted, in whole only, but only upon thirty (30) days' prior written notice to Lender, and if prepayment is made prior to April 26, 2020, then upon such prepayment there shall be due a prepayment premium equal to the amount of interest that would have been payable through April 26, 2020 on the principal amount prepaid less the actual interest paid by the undersigned on account of such amount prepaid to the date of prepayment. The prepayment premium (i) shall be in addition to all other sums due hereunder; and (ii) shall not be a credit against any other sums due hereunder, except for the prepayment premium. The Note shall not be deemed to be satisfied until all sums due hereunder, including the prepayment premium, are paid in full. Notwithstanding the foregoing, this Note may not be prepaid or satisfied absent simultaneous prepayment or satisfaction of the First Mortgage as hereinafter defined.

An Exit Fee in the amount of $8,000.00 shall be due upon the Maturity Date or sooner acceleration of the sums due hereunder. The Exit Fee (i) shall be in addition to all other sums due hereunder; and (ii) shall not be a credit against any other sums due hereunder, except for the Exit Fee. The Note shall not be deemed to be satisfied until all sums due hereunder, including the Exit Fee, are paid in full.

This Note is secured by a pledge of the membership interests of Chouk Ng, Wilson Ng, and Steven Ng (collectively, the "Guarantors") in 2 Bowery Holding LLC and 26 Bowery LLC, each a New York limited liability company, pursuant to a Membership Interest Pledge, Assignment and Security Agreement of even date herewith, between Lender, Borrower and Guarantors, (collectively, the "Pledge Agreements"), and guaranteed by the Guarantors pursuant to a Guaranty of Payment of even date herewith (the "Guaranty"). Notwithstanding anything to the contrary contained herein, the membership interests included in the Pledge Agreements securing this Note shall not be released until all sums due and owing Lender under this Note have been paid in full as provided herein.

The Borrower has also entered into a first mortgage with Double Bowery Funding LLC in the amount of $8,200,000.00 (the "First Mortgage") dated of even date herewith.

In addition, an Event of Default or a default hereunder shall be an Event of Default under the First Mortgage and an Event of Default or a default under the First Mortgage shall constitute a default under this Note.

The loan evidenced by this Note has been made and this Note has been executed and delivered in and shall be construed pursuant to and governed by the laws of the State of New York.

"Wall Street Journal Prime Rate" means the prime commercial lending rate in effect for each day as published in The Wall Street Journal. If the Prime Rate becomes unavailable for any temporary period in The Wall Street Journal (other than weekends and holidays when that newspaper is not published), the holder of this Note may use the last highest Prime Rate as published in The New York Times. If the Prime Rate ceases to be a commonly published index, the holder of this

Note reserves the right to change the index and the amount to be added to it upon notice to the Maker.

This Note is the joint and several liability of the undersigned.

This Note is subject to the express condition that at no time shall the Borrower be obligated or required to pay interest on the principal balance due at a rate which could subject holder to either civil or criminal liability as a result of being in excess of the maximum interest rate which Borrower is permitted by law to contract or agree to pay. If by the terms of this Note, the Borrower is at any time required or obligated to pay interest on the principal balance due at a rate in excess of such maximum rate, the rate and the interest payable shall be computed at such maximum rate and all prior interest payments in excess of such maximum rate shall be deemed to have been payments in reduction of the principal balance and, in such event, the Borrower shall automatically be deemed to have waived all claims with respect to and defenses arising out of any interest inadvertently exacted above the maximum legal rate applicable.

Presentment for payment, demand, notice of dishonor, protest and notice of protest are hereby expressly and voluntarily waived by the undersigned.

**THE UNDERSIGNED AGREES THAT ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT BY THE UNDERSIGNED OR LENDER ON OR WITH RESPECT TO THIS NOTE OR ANY OTHER DOCUMENT EXECUTED AND DELIVERED IN CONNECTION HEREWITH OR THE DEALINGS OF THE PARTIES WITH RESPECT HERETO OR THERETO, SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY. LENDER AND THE UNDERSIGNED EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING. FURTHER, THE UNDERSIGNED WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY SPECIAL, EXEMPLARY, PUNITIVE, CONSEQUENTIAL OR OTHER DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. THE UNDERSIGNED WAIVES THE RIGHT TO INTERPOSE ANY COUNTERCLAIM IN ANY SUCH SUIT, ACTION, OR PROCEEDING, OTHER THAN A COUNTERCLAIM WHICH CAN ONLY BE ASSERTED IN THE SUIT, ACTION, OR PROCEEDING BROUGHT BY LENDER UNDER THIS NOTE AND WHICH CANNOT BE MAINTAINED IN A SEPARATE ACTION. THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT THIS PARAGRAPH IS A SPECIFIC AND MATERIAL ASPECT OF THIS NOTE AND THAT LENDER WOULD NOT EXTEND CREDIT TO THE UNDERSIGNED IF THE WAIVERS SET FORTH IN THIS PARAGRAPH WERE NOT A PART OF THIS NOTE.**

**ANY LEGAL SUIT, ACTION, OR PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE OR THE OTHER DOCUMENTS EXECUTED OR DELIVERED IN CONNECTION HEREWITH MAY AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, AND BORROWER WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON**

CONVENIENS OF ANY SUCH SUIT, ACTION, OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY

SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION, OR PROCEEDING.

This Note may not be changed orally.

[Signatures on Following Page]

**IN WITNESS WHEREOF**, the Borrower has caused this Note to be duly executed and delivered.

BORROWER:

**2 BOWERY HOLDING LLC**
a New York limited liability company

By: _____
Name:  Wilson Ng
Title:  Managing Member

**26 BOWERY LLC**
a New York limited liability company

By: _____
Name:  Wilson Ng
Title:  Managing Member

STATE OF NEW YORK        )
                                              ) ss.:
COUNTY OF NEW YORK  )

On the 26th of April, 2019 before me personally appeared WILSON NG, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

RONALD M. BEIGEL
Notary Public-State of New York
No. 01BE4861461
Qualified in Nassau County
Commission Expires June 9, 2022

# MEMBERSHIP INTEREST PLEDGE, ASSIGNMENT AND SECURITY AGREEMENT

This **MEMBERSHIP INTEREST PLEDGE, ASSIGNMENT AND SECURITY AGREEMENT** (this "**Agreement**"), dated as of the 26th day of April, 2019, by Chouk Ng, Wilson Ng, and Steven Ng (collectively, the "**Pledgor**"), being all of the members of 2 BOWERY HOLDING LLC to **BOWERY MEZZ LLC**, a New York limited liability company, with offices c/o Hirshmark Capital LLC, 15 West 26th Street, Suite 901, New York, New York 10010 ("**Lender**").

## W I T N E S S E T H

WHEREAS, Pledgor owns 100% of the membership interests (the "**Pledged Interests**") of **2 BOWERY HOLDING LLC**, a New York limited liability company (the "**Borrower**");

WHEREAS, Borrower has applied to Lender for a loan to Borrower and 26 Bowery LLC in the principal amount of up to FOUR HUNDRED THOUSAND AND XX/100 DOLLARS ($400,000.00) (the "**Loan**");

WHEREAS, as a condition to making the Loan to Borrower, Lender has required that Pledgor pledge the Pledged Interests to Lender;

WHEREAS, Pledgor is the holder of a direct beneficial interest in Borrower, the extension of the Loan to Borrower is of substantial benefit to Pledgor and, therefore, Pledgor desires to pledge the Pledged Interests to Lender as additional security for the Loan;

WHEREAS, Lender agreed to make the Loan to Borrower upon, and subject to, the terms and conditions set forth in this Agreement and in the Loan Documents (as hereinafter defined);

WHEREAS, concurrently herewith, Borrower has delivered to Lender a promissory note and general security agreement of even date herewith in the amount of the Loan (as each may hereafter from time to time be modified, amended, replaced, restated, supplemented, renewed, or extended, and any note(s) issued in exchange therefor or in substitution thereof, collectively, the "**Note**") in evidence of the Loan, with interest from the date hereof at the rates set forth in the Note, such interest and the principal amount thereof to be payable in accordance with the terms and conditions provided in the Note; and

WHEREAS, Lender has agreed to make the Loan to Borrower upon, and subject to, the terms and conditions set forth herein and in the Note and any and all of the other documents, instruments and agreements now or hereafter executed by Borrower, Pledgor and/or others and by or in favor of Lender, which wholly or partially secure or guaranty payment of the Loan or which from time to time may evidence any portion of the Loan (as each of the same may be amended, modified, extended, renewed, restated, consolidated, substituted, supplemented or replaced from time to time, collectively, the "**Loan Documents**").

NOW, THEREFORE, in consideration of the making of the Loan and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Pledgor hereby agrees, covenants, represents, warrants with and to Lender as follows:

SECTION 1.  **Definitions**.  Unless the context otherwise requires, the following term(s) shall have the meanings set forth below (certain other terms are defined elsewhere in this Agreement):

"**Collateral**" shall have the meaning ascribed to such term in Section 2 of this Agreement.

"**Event of Default**" shall have the meaning ascribed to such term in Section 7 of this Agreement.

"**Obligations**" shall mean and include all obligations of Borrower (including, without limitation, the payment and performance obligations of Borrower) pursuant to the terms of the Note and the other Loan Documents and all obligations of Pledgor under this Agreement.

"**Person**" shall mean an individual, corporation, limited liability company, business trust, membership, joint tenant or tenant-in-common, trust, unincorporated organization, or other entity, or a federal, state or local government or any agency or political subdivision thereof.

"**Pledged Interest**" shall mean the membership interests owned by Pledgor in the Borrower attached hereto as **Exhibit A**.

"**Property**" shall mean 2 Bowery, New York, New York 10013.

SECTION 2.  **Grant of Security Interest, Etc**.

(a)    As continuing collateral security for the full and punctual payment and performance of the Obligations (whether upon stated maturity, by acceleration or otherwise), Pledgor hereby irrevocably grants, pledges and assigns, subject to the terms of this Agreement, a continuing first priority lien on and security interest in, and, as a part of such grant, pledge and assignment, hereby assigns to Lender as collateral security all of the following (whether now owned or at any time hereafter acquired or now existing or hereafter existing or created): (x) all of Pledgor's Pledged Interest in the Borrower including without limitation: (i) all of Pledgor's interest in the capital of the Borrower and Pledgor's interest in all profits and distributions to which Pledgor shall at any time be entitled in respect of such Pledged Interest or any other interest in the Borrower owned by Pledgor; (ii) all other payments, if any, due or to become due to Pledgor in respect of the Pledged Interest, whether as contractual obligations, damages, insurance proceeds or otherwise; (iii) all of Pledgor's rights, powers and remedies, as a member of the Borrower or arising from its ownership of the Pledged Interest pursuant thereto or any other equity interest in the Borrower owned by Pledgor; and (iv) all of Pledgor's rights as a member of the Borrower to manage the affairs (including, without limitation, the power to sell, mortgage or otherwise deal with the Property (as hereinafter defined)), to make determinations, to exercise any election

(including, but not limited to, election of remedies, the filing of any petition for reorganization or dissolution of the Borrower and the exercise of the Borrower's rights as debtor-in-possession in the event the Borrower files a petition under Title 11 of the United States Code) or option or to give or receive any notice, consent, amendment, waiver or approval; together with full power and authority to demand, receive, enforce, execute, endorse or cash any checks or other payments, or other instruments or orders, to file any claims and to take any action that in the opinion of Lender may be necessary or advisable in connection with any of the foregoing (the rights described in these subsections (iii) and (iv) shall be referred to as **"Management Rights"**); and (y) to the extent not otherwise included, additions to, accessions to, substitutions of, products or proceeds of any or all of the foregoing collateral (collectively, (x) and (y) shall be referred to as the **"Collateral"**).

(b)     Pledgor hereby acknowledges and consents (i) in the event of a foreclosure hereunder to the transfer and assignment to Lender, its designee, nominee or transferee of the Collateral subject to this Agreement, and (ii) to the exercise on one or more occasions of any rights or remedies by Lender pursuant hereto or as allowed by law.

SECTION 3.    **Representations and Warranties of Pledgor**.  Pledgor represents and warrants to Lender that:

(a)     it has furnished to the Lender a true and complete copy of the Operating Agreement (the "**Operating Agreement**") and the Articles of Organization (the "**Articles**") for the Borrower, which are in full force and effect and in respect of which no offset, defense or counterclaim exists to Pledgor's right to receive any distributions or other moneys in accordance with the terms thereof;

(b)     Pledgor is the legal and beneficial owner of, and is not acting as a nominee for any Person with respect to, the Collateral and all Pledged Interests are free and clear of all liens, claims, charges, security interests or other encumbrances except for the security interest created by this Agreement.  Pledgor owns 100% of the membership interests in the Borrower;

(c)     To Pledgor's knowledge, the Borrower has been duly formed and is validly existing and in good standing under the laws of the State of New York and has made all requisite filings in said jurisdiction and all other jurisdictions where it owns property or conducts business;

(d)     the execution, delivery and performance of this Agreement by the Pledgor and the granting of the lien on the Collateral contemplated hereby has been duly authorized by all necessary action and does not and will not (i) violate any applicable law, rule or regulation or any provision relating to the Pledgor or the Borrower, (ii) conflict with, result in a breach of, or constitute a default under any provision of any agreement, operating agreement, indenture, mortgage or other agreement or instrument to which the Pledgor or, to Pledgor's knowledge, the Borrower is a party or by which it or any of its  properties or assets is bound or subject or any license, judgment, order or decree of any governmental authority having jurisdiction over the Pledgor or, to Pledgor's knowledge the Borrower or its activities, properties or assets or (iii) result in or require the creation or imposition of any lien upon or with respect to any properties or assets now or hereafter owned by the Pledgor or the Borrower (other than the liens created hereunder);

(e)     Pledgor has full power and lawful authority to make the pledge, grant and assignment contemplated by this Agreement;

(f)     there are no actions, suits, claims or other proceedings pending, or to the best of Pledgor's knowledge, threatened against or affecting Pledgor, the Borrower or the Collateral which could have a material adverse effect on either (i) Pledgor and the performance of Pledgor's obligations hereunder or (ii) the validity or priority of the liens and security interests granted by Pledgor as provided herein;

(g)     this Agreement has been duly executed and delivered by the Pledgor and constitutes a legal, valid and binding obligation of the Pledgor enforceable against the Pledgor in accordance with its terms;

(h)     no consent or authorization of, filing with, or other act by or in respect of, any arbitrator or governmental authority and no consent of any other Person is required (i) for the execution, delivery and performance of this Agreement by the Pledgor, (ii) for the pledge by the Pledgor of the Collateral to the Lender pursuant to this Agreement, or (iii) for the exercise by the Lender of the rights provided for in this Agreement or the remedies in respect of the Collateral pursuant to this Agreement, except such as (A) have been obtained, made or taken and are in full force and effect or (B) may be required under federal or state securities laws in connection with any sale of the Collateral;

(i)     there are no outstanding options, warrants or other agreements with respect to the Collateral;

(j)     Pledgor is not in default of any of its obligations arising out of its Pledged Interest.  No Person has any right to terminate, or any right to foreclose upon, any or all of the Collateral, other than Lender under this Agreement;

(k)     Pledgor has not been known by any name other than that first set forth above;

(l)     Pledgor is the sole owner of the Pledge Interests;

(m)     Intentionally omitted; and

(n)     Pledgor's address and where Pledgor's records concerning the Collateral are kept is located at 26 Bowery, 5th Floor, New York, New York 10013.

(o)     No portion of the Pledged Interests are evidenced by any certificates.

SECTION 4.  **Covenants of Pledgor**.  Pledgor hereby covenants and agrees that it shall:

(a)     at its sole cost and expense, make, procure and execute, acknowledge and deliver, from time to time, all things, writings, assurances and other instruments as may be required

by Lender to further enhance, preserve, establish, demonstrate, perfect, enforce or better assure this Agreement and the lien, pledge, grant and security interest created hereby, and pay the cost of filing or recording the same in the public records specified by Lender;

        (b)     comply with all of the terms and conditions of the Operating Agreement and Articles that do not conflict with or are not inconsistent with Pledgor's obligations under this Agreement, not waive any rights it may have thereunder and deliver to Lender any notice of default received or sent by Pledgor thereunder promptly after its receipt or delivery thereof;

        (c)     comply with all of the terms and conditions of the Note, including without limitation, the payment of all principal, interest and other amounts as they become due;

        (d)     not permit the amendment or modification of the Operating Agreement or Articles nor the admission of any additional members or issuance of additional membership or equity interests therein, without Lenders prior written consent;

        (e)     not permit the taking of any action by another member of the Borrower which requires the specific consent of all of the members of the Borrower and which could impair the value of the Collateral;

        (f)     take no action and give no consent, waiver or ratification which could materially adversely impair the value of the Collateral or would be inconsistent with any of the provisions of this Agreement, the Note or the Other Loan Documents;

        (g)     not consent to or vote in favor of the Borrower incurring any material debt or obligations, other than accounts payable, equipment leases, office leases, material agreements and other liabilities incurred in the ordinary course of business, without the prior consent of Lender;

        (h)     furnish to Lender promptly upon Lenders request following Pledgor's receipt thereof, copies of all other notices, requests and other documents received by the Pledgor and attributable to the Collateral, and from time to time (I) furnish to Lender such information and reports regarding the Collateral as Lender may reasonably request, (II) upon request of Lender, make to the other parties thereto such reasonable demands and requests for information and reports or for action as the Pledgor is entitled to make under the Operating Agreement or Articles;

        (i)     maintain its chief place of business and residence and the office where it keeps its records concerning the Collateral, and the original copies of this Agreement and of all other chattel paper which evidences the Collateral at the location therefor identified in Section 3 of this Agreement or, upon thirty (30) days' prior written notice to Lender, at such other location in a jurisdiction where all necessary action to perfect Lenders lien, pledge and security interest in the Collateral shall have been taken;

        (j)     not consent to any proposal, amendment or action which would permit the Borrower to acquire or own any material assets other than the Property and such incidental personal property necessary for the operation of the Property, not consent to any proposal,

amendment or action which would permit) the Borrower to engage in any business or activity other than the ownership, operation and maintenance of the Property, and activities incidental thereto and not consent to any proposal, amendment or action which would permit the Borrower to further encumber the Property with any mortgage lien;

        (k)    Pledgor will not sell, transfer, convey or otherwise dispose of any interest in the Collateral;

        (l)    not suffer or permit any lien to exist on or with respect to the Collateral except the lien created under this Agreement;

        (m)    defend the Lender's right, title and interest in, to and under the Collateral against the claims and demands of all Persons whomsoever;

        (n)    cause the Borrower to execute and deliver to the Lender on the date hereof a letter in the form attached hereto as **Exhibit B**;

        (o)    not perform, authorize or enter into any transaction for the termination, dissolution or winding up of, any act or failure to act constituting a termination, dissolution or winding up of, or the merger or consolidation with another entity or entities by, the Borrower without the prior written consent of the Lender; and

        (p)    not acquire or own any assets other than the Pledge Interests and not engage in any business or activity other than the ownership of the Pledge Interests and will not encumber the Pledge Interest with any lien other than that which is created hereby.

        SECTION 5.  **Payment of Distributions and Other Moneys**.  Notwithstanding anything herein to the contrary, unless an Event of Default hereunder shall have occurred and be continuing, Pledgor shall have the right to receive and retain all distributions and other moneys (other than distributions upon liquidation of the Borrower which shall be payable to Lender in all events) payable in respect of the Collateral.  Upon the occurrence and during the continuance of any Event of Default, Pledgor's right to receive such distributions and other moneys pursuant to this Section 5 shall automatically terminate and all such distributions and other moneys shall be made directly to Lender until payment of all amounts evidenced by the Note have been paid in full.  All distributions and other payments which are received by the Pledgor contrary to the provisions of this Section 5 shall be received in trust for the benefit of Lender, shall be segregated from other funds of the Pledgor and shall be forthwith paid over to the Lender as Collateral in the same form as so received (with any necessary endorsement).

        SECTION 6.  **Rights of Pledgor**.  So long as no Event of Default has occurred and is continuing, Pledgor shall be entitled to vote or consent with respect to the Collateral in any manner not inconsistent with this Agreement. Upon the occurrence and during the continuance of Event of Default, the Lender shall have the exclusive right to vote or give consents with respect to the Collateral. The Pledgor hereby grants to the Lender an irrevocable proxy to vote the Collateral, which proxy shall be effective immediately upon the occurrence of and during the continuance of an Event of Default, and upon the request of the Lender, the Pledgor agrees to deliver to the Lender

such further evidence of such irrevocable proxy or such further irrevocable proxy to vote the Collateral as the Lender may request.

SECTION 7.  **Events of Default**.  Any of the following shall constitute an "**Event of Default**" hereunder:

(a)    if a default shall be made in the payment of any payment of principal or interest due under the Note or in the payment of any other payment due Lender under the Loan Documents when and as the same shall become due and payable; or

(b)    if there shall occur a dissolution or termination of the Borrower; or

(c)    if Pledgor shall fail to perform or observe any covenant, condition or agreement to be performed or observed by it hereunder or under the Loan Documents, and such default shall have continued after the expiration of applicable grace periods set forth therein, if any; or

(d)    if at any time it is determined by Lender that any representation or warranty made by Pledgor herein is or was false, misleading or erroneous in any material respect when made; or

(e)    if Pledgor or the Borrower shall (i) apply for or consent to the appointment of a receiver, trustee or liquidator, (ii) be unable, or admit in writing its inability, to pay its debts as they mature, (iii) make an assignment for the benefit of creditors, (iv) be adjudicated a bankrupt or declared insolvent or (v) file a voluntary petition in bankruptcy or a petition or any answer seeking reorganization or an arrangement with creditors or to take advantage of any insolvency proceedings; or

(f)    if, by order of a court of competent jurisdiction, a receiver, trustee or liquidator of Pledgor, the Borrower or of the Collateral or any part thereof shall be appointed, and such order shall not be discharged or dismissed within sixty (60) days after such appointment; or if any creditor of Pledgor or the Borrower shall file a petition in bankruptcy against Pledgor or the Borrower or for reorganization of Pledgor or the Borrower, and such petition shall not be discharged or dismissed within sixty (60) days after the filing thereof; or

(g)    if any court shall render a final judgment against Pledgor or Company in an amount in excess of $25,000 or if the property of Pledgor or Company in an amount of $25,000 or more is attached, and, in either such case, the same shall not be discharged within sixty (60) days after the entry thereof, or such other shorter or longer applicable time period set forth in the Loan Documents;

(h)    if Pledgor shall sell, assign, transfer, pledge, encumber, mortgage, hypothecate, convey or otherwise dispose of, or agree to or permit any of the foregoing, in whole or in part, the Collateral, in any manner, either voluntarily or involuntarily, by operation of law or otherwise; or

(i)      except for transactions in the ordinary course of business, if the Borrower shall sell, lease, assign, transfer, pledge, encumber, mortgage, hypothecate, convey or otherwise dispose of, or agree to or permit any of the foregoing, in whole or in part, any of the assets of the Borrower, whether real or personal or now owned or hereafter acquired, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, without, in any such case, the prior written consent of Lender, except that in all events a sale, transfer, conveyance or other disposition of fee title to the Property shall be an Event of Default hereunder; or

(j)      an "**Event of Default**" as defined in any other Loan Documents.

(k)      an Event of Default or default under that certain Consolidated and Restated Mortgage Note in the principal amount of $8,200,000.00 dated April 26, 2019 made by Borrower to Double Bowery Funding LLC or under the Consolidation, Modification and Extension Agreement securing such note, including, without limitation, failure to pay real estate taxes and/or water charges, as provided in the aforementioned loan documents.

SECTION 8.    **Remedies**.  If an Event of Default shall occur and be continuing, in addition to its rights under Section 5 above:

(a)      Lender may declare the entire unpaid principal balance of the Note to be immediately due and payable, and upon any such declaration said unpaid principal balance shall become and be immediately due and payable, anything in the Note or other documents to the contrary notwithstanding.

(b)      The Lender shall have all the rights and remedies of a secured party under the New York Uniform Commercial Code (the "**UCC**").  In addition, the Lender shall have the right, without demand of performance or other demand, advertisement or notice of any kind, except as specified below, to or upon the Pledgor or any other Person (all and each of which demands, advertisements and/or notices are hereby expressly waived to the extent permitted by law), to proceed forthwith to collect, receive, appropriate and realize upon the Collateral, or any part thereof and to proceed forthwith to sell, assign, give an option or options to purchase, contract to sell, or otherwise dispose of and deliver the Collateral or any part thereof in one or more parcels at public or private sale or sales at any stock exchange, broker's board or at any of the Lender's offices or elsewhere at such prices and on such terms and restrictions (including, without limitation, a requirement that any purchaser of all or any part of the Collateral shall be required to purchase any securities constituting the Collateral solely for investment and without any intention to make a distribution thereof) as the Lender may deem appropriate without any liability for any loss due to decrease in the market value of the Collateral during the period held.  Prior to disposing of the Collateral, Lender shall give Pledgor ten Business Day's prior notice of such anticipated disposition.  Such notice shall be sent by first class mail to address for Pledgor set forth in the preamble of this Agreement.  Any disposition of the Collateral or any part thereof may be for cash or on credit or for future delivery without assumption of any credit risk, with the right to the Lender to purchase all or any part of the Collateral so sold at any such sale or sales, free of any equity or right of redemption, which right or equity is, to the extent permitted by applicable law, hereby expressly waived and released by the Pledgor.

(c)     All of the Lender's rights and remedies under this Agreement and under applicable law, including but not limited to the foregoing, shall be cumulative and not exclusive and shall be enforceable alternatively, successively or concurrently as the Lender may deem expedient.

(d)     The Lender may elect to obtain the advice of any independent nationally-known investment banking firm, including any such firm affiliated with Lender, with respect to the method and manner of sale or other disposition of any of the Collateral, the best price reasonably obtainable therefor, the consideration of cash and/or credit terms, or any other details concerning such sale or disposition.

(e)     The Pledgor recognizes that the Lender may be unable to effect a public sale of all or a part of the Collateral by reason of certain prohibitions contained in the Securities Act of 1933, as amended (the "**Securities Act**"), or other relevant securities laws in any jurisdiction, but may be compelled to resort to one or more private sales to a restricted group of purchasers who will be obligated to agree, among other things, to acquire the Collateral for their own account, for investment and not with a view to the distribution or resale thereof. The Pledgor agrees that private sales so made may be at prices and on other terms less favorable to the seller than if the Collateral were sold at public sale, and that the Lender has no obligation to delay the sale of any Collateral for the period of time necessary to permit the registration of the Collateral for public sale under the Securities Act or other relevant securities laws in any jurisdictions. The Pledgor agrees that a private sale or sales made under the foregoing circumstances shall not be deemed to be commercially unreasonable by virtue of such circumstances.

(f)     If any consent, approval or authorization of, or filing with, any governmental authority or any other Person shall  be necessary to effectuate any sale or other disposition of the Collateral, or any partial disposition of the Collateral, including, without limitation, under any federal or state securities laws, the Pledgor agrees to execute all such applications, registrations and other documents and instruments as may be required in connection with securing any such consent, approval or authorization, and will otherwise use commercially reasonable efforts to secure the same. The Pledgor further agrees to use its best efforts to effectuate such sale or other disposition of the Collateral as the Lender may deem necessary or desirable pursuant to the terms of this Agreement.

(g)     Upon any sale or other disposition, the Lender shall have the right to deliver, endorse, assign and transfer to the purchaser thereof the Collateral so sold or disposed of. Each purchaser at any such sale or other disposition, including the Lender, shall hold the Collateral free from any claim or right of whatever kind, including any equity or right of redemption. The Pledgor specifically waives, to the extent permitted by applicable law, all rights of stay or appraisal which the Pledgor had or may have under any rule of law or statute now existing or hereafter adopted.

(h)     The Lender shall not be obligated to make any sale or other disposition unless the terms thereof shall be satisfactory to it. The Lender may, without notice or publication, adjourn any private or public sale, and, upon five Business Days' prior notice to the Pledgor, hold such sale at any time or place to which the same may be so adjourned. In case of any sale of all or any part of the Collateral on credit or future delivery, the Collateral so sold may be retained by

the Lender until the selling price is paid by the purchaser thereof, but the Lender shall incur no liability in case of the failure of such purchaser to take up and pay for the property so sold and, in case of any such failure, such property may again be sold as herein provided.

(i)    If Lender conducts a secured party sale under the UCC or elects to retain all or any of the Collateral in satisfaction of any of Pledgor's obligations under this Agreement, the Person acquiring the Pledged Interest at such sale or upon such retention may exercise all Management Rights, and at such Person's sole option, be admitted as a member of the Borrower in full place of Pledgor.  Such acquisition of the Pledged Interest shall not, to the extent permitted by law, effectuate a dissolution or winding up of the Borrower.  Pledgor agrees and acknowledges that none of the Obligations of the Borrower shall be or deemed to be paid, discharged or satisfied by reason of Lender's exercise of any rights or remedies under this Agreement, or the UCC, except to the extent of cash proceeds actually received by Lender on account of its exercise of any of its rights or remedies under this Agreement.

SECTION 9.   **General Provisions Regarding Remedies**.

(a)    It is expressly agreed that Lender may, at its option, exercise any rights or remedies hereunder or at law or in equity with respect to less than all of the Collateral such as, more specifically, with respect only to receipt of any distributions, moneys or proceeds in respect of the Collateral, leaving unexercised its rights with respect to all or another portion of the remainder of the Collateral at a later time or times.

(b)    Neither failure nor delay on the part of Lender to exercise any right, remedy, power or privilege provided for herein or by statute or at law or in equity shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, remedy, power or privilege preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

(c)    No right or remedy herein conferred upon or reserved to Lender is intended to be exclusive of any other right or remedy, and Lender may exercise all rights and remedies given hereunder or now or hereafter existing at law or in equity.  No such exercise shall relieve Pledgor from liability for any past or future debts or obligations with respect to the Borrower, or otherwise in respect of the Borrower.

(d)    Any sums realized by Lender pursuant to any exercise of its rights or remedies shall, after deducting all costs and expenses of Lender incurred in connection therewith (including, without limitation, reasonable counsel fees and expenses and all costs and expenses reasonably incurred in the care, safekeeping, collection, sale and delivery of the Collateral or any part thereof), be applied to the payments or reduction, in whole or in part, of the amounts secured hereby.  Any balance thereafter remaining shall be paid to the person legally entitled thereto.

(e)    Any payment made or expense incurred by Lender (including, without limitation, reasonable counsel fees and expenses and all costs and expenses reasonably incurred in the care, safekeeping, collection, sale and delivery of the Collateral or any part thereof) in connection with the exercise of any of its rights or remedies shall be payable by Pledgor on

demand, with interest at the default rate of interest as provided in the Note, and shall be secured hereby.

(f)    Upon the occurrence of an Event of Default, Pledgor will immediately appoint the Lender's representative to serve as manager of Pledgor with full power and authority to make any and all decisions regarding the Pledgor and the Pledged Interests and the sale or other disposition of all or any part of the property owned by the Company pursuant to the Operating Agreement of the Company.

SECTION 10. **Termination**. This Agreement shall terminate, and Lender shall assign, transfer and deliver, without recourse or warranty and against receipt, the Collateral (to the extent that the same have not been sold or otherwise disposed of as permitted hereby) to or upon the order of Pledgor, at such time as all amounts payable under the Note, and all other amounts secured hereby have been paid in full to Lender. Lender agrees that, at the time of such full payment, it will execute, deliver, acknowledge or file, as the case may be, such documents, and take such other action, as Pledgor may reasonably request in order to effectuate the termination of this Agreement and the lien, pledge and security interest created hereby.

SECTION 11. **Obligations Not Impaired**. Pledgor hereby waives diligence, presentment, demand, protest and notice of any kind whatsoever in respect of the Collateral, except as specifically set forth herein, as well as any requirement that Lender exhaust any right or remedy or take any action in connection with the Note, this Agreement or any other Loan Document. Pledgor further waives all right to have any security for the Note marshaled upon the exercise of any remedies permitted hereunder or under any other instrument securing the Note. Pledgor agrees that Lender may take or release other security for the obligations secured hereby, release any party liable for any such obligations, grant extensions, renewals or indulgences with respect to said obligations, and may apply any other security therefor held by it without prejudice to any of its rights hereunder.

SECTION 12. **Notices**. Except as otherwise expressly provided in this Agreement, all notices hereunder shall be in writing and shall be deemed properly given or served for all purposes when presented personally, sent by registered or certified mail, postage prepaid or sent by a nationally recognized overnight courier service, if to Lender at its address set forth above, and, if to Pledgor at its address set forth above, or at such other address as the addressee may specify from time to time by notice to the other party.

SECTION 13. **Indemnity**. Lender shall not be obligated to perform or discharge nor does it hereby undertake to perform or discharge any obligation, duty or liability with respect to the Collateral or the Borrower, and Pledgor shall and does hereby agree to indemnify Lender for, and to hold Lender harmless of and from, any and all liability, loss or damage which it may or might incur with respect to or by reason of any of the Collateral or this Agreement and of and from any and all claims and demands whatsoever which may be asserted against it in respect of this Agreement or by reason of any alleged obligations or undertaking on its part to perform or discharge any of the terms, covenants or agreements contained in the Operating Agreement, the Articles or with respect to the Collateral. Should Lender incur any such liability, loss or damage, or in the defense of any claims or demands in respect thereof, the amount thereof (including costs,

expenses and reasonable attorneys' fees) shall be secured hereby and Pledgor shall reimburse Lender therefor immediately upon demand. Notwithstanding the foregoing, in no event will Pledgor be obligated to indemnify Lender with respect to any acts or omissions of Lender which constitute gross negligence or willful misconduct.

SECTION 14. **Registration of Pledge**. The Pledgor hereby instructs the Borrower to register on Borrower's books and records the pledge of the Pledged Interests in the Borrower by the Pledgor to the Lender.

SECTION 15. **Certificates and Powers**. Simultaneously herewith, Pledgor shall deliver to Pledgee each original certificate evidencing the Pledged Company Interests (which certificates shall constitute "security certificates" as defined in the UCC) in the form annexed hereto as Exhibit C, together with an undated limited liability company interest power, covering each such certificate, duly executed in blank in the form of Exhibit D attached hereto.

SECTION 16. **Power of Attorney**. The Pledgor hereby constitutes and irrevocably appoints the Lender, with full power of substitution and revocation by the Lender, as the Pledgor's true and lawful attorney-in-fact, for the purpose from time to time upon the occurrence and during the continuance of an Event of Default of carrying out the provisions of this Agreement and taking any action and executing any instrument that the Lender deems necessary or advisable to accomplish the purposes of this Agreement, including, without limitation, to affix to certificates and documents representing any Collateral the endorsements or other instruments of transfer or assignment delivered with respect thereto and to transfer or cause the transfer of the Collateral, or any part thereof, on the books of the Borrower. The power of attorney granted pursuant to this Agreement and all authority hereby conferred are granted and conferred solely to protect the Lender's interest in the Collateral and shall not impose any duty upon the Lender to exercise any power. This power of attorney shall be irrevocable as one coupled with an interest until the Obligations have been paid in full.

SECTION 17. **Insurance.**    The Pledgor will, at Pledgor's expense, maintain or cause to be maintained, and shall cause Company to maintain insurance with respect to the Collateral and the personal property secured in such amounts and against such insurable hazards as may be required pursuant to the Loan Documents.

SECTION 18. **Reimbursement of Lender's Expenses**. In the case of an Event of Default hereunder, and in the case of each sale, or of any other proceeding to collect any of the Obligations by enforcement of the Lender's lien and security interest in the Collateral, the Lender shall be reimbursed for all costs and expenses of every kind reasonably incurred in connection therewith, and as set forth in the Loan Documents, including reasonable attorney's fees, plus interest thereon at the "Default Rate" (as defined in the Loan Documents ) (but not in excess of the highest rate permitted by law).

SECTION 19. **Irrevocability of Pledge**. The security interest herein granted is irrevocable and shall continue so long the Loan remains unpaid. Upon payment in full of the Loan, the Lender shall transfer its then interest in the Collateral to the Pledgor without recourse, representation or warranty whatsoever and deliver to the Pledgor all of the Documents and other

instruments held by the Lender which evidence or constitute the Collateral, together with a UCC-3 termination statement with respect to any financial statements previously filed with respect to the Collateral.

SECTION 20. **Further Assurances**.

(a)     The Pledgor shall, at any time on request of the Lender, sign financing statements and other instruments, in forms acceptable to the Lender, and do such further acts and things, as it may reasonably request or as are reasonably necessary in the Lender's opinion to establish and maintain a valid first lien and security interest in the Collateral in accordance with the terms of the Loan Documents and this Agreement or to effectuate the purposes of this Agreement. Upon the Pledgor's failure to do so, the Lender is authorized as attorney-in-fact of the Pledgor to sign any such instrument. The Pledgor agrees to pay all filing and recording fees and to reimburse the Lender for all costs and expenses of any kind incurred in any way in connection with such financing statements or other instruments. The Pledgor's refusal or failure to comply with the Lender's request in accordance with the provision of this Article shall constitute a default hereunder.

(b)     The Pledgor shall pay, when due, all charges, costs and expenses of any kind related to the Collateral and shall keep the Collateral free and clear of all liens.

SECTION 21. **Sales of Interests in the Loan by the Lender**.  Lender shall have the right, in Lender's sole discretion, to sell, transfer, convey, pledge or encumber its interest in the Loan, to any third party or to securitize the Loan, at Lender's reasonable cost and expense. The Pledgor shall be required to execute any and all pledge modification agreements, participation agreements, substitute notes, substitute pledge agreements and/or other documents as Lender shall reasonably request in order to effectuate such sale, transfer, conveyance, pledge, encumbrance or securitization, provided that same does not in any manner increase the Pledgor's monetary obligations to Lender, or include or require a request for consent, recognition or notification of any Person with an interest in an Affiliated Entity as of the date hereof who did not consent to the Loan Documents or the recording or filing of a public record other than amendment or assignment of the financing statement filed in connection with this Agreement.

SECTION 22. **Transfer of Interest in the Company**.  The Pledgor may not transfer its Pledged Interests in the Company to a third party without the prior written consent of the Lender.

SECTION 23. **Invalidity; Automatic Reformation**.  In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall, at Lenders option, not affect any other provision of this Agreement, but this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. If any provision of this Agreement is determined by a court of competent jurisdiction to be unenforceable, such provision shall be automatically reformed and construed so as to be valid, operative and enforceable to the maximum extent permitted by the law while most nearly preserving its original intent. The invalidity of any part of this Agreement shall not render invalid the remainder of the Agreement.

SECTION 24. **Amendment, Succession and Headings**. This Agreement may not be amended, modified, waived, discharged or terminated orally, but only by an instrument in writing duly signed by or on behalf of Pledgor and Lender. This Agreement shall inure to the benefit of, and be binding upon, Pledgor, Lender and their respective successors and assigns. The section headings in this Agreement are for convenient reference only and shall not define or limit the provisions hereof. Throughout this Agreement, whenever the circumstances or the context of this Agreement so requires, nouns, pronouns and verbs shall be construed as masculine, feminine, or the neuter, and the singular shall be construed as the plural, and vice versa. All references herein to (i) "Articles," "Sections" and "Paragraphs" shall refer to corresponding provisions of this Agreement, and (ii) "including" and "include" and other words of similar impact are deemed to be followed by the phrase "without limitation" and other words of similar impact.

SECTION 25. **Waiver of Trial by Jury**. PLEDGOR AND LENDER EACH HEREBY AGREE TO WAIVE ITS RIGHTS TO A JURY TRIAL ON ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, OR ANY DEALINGS BETWEEN PLEDGOR AND LENDER. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. PLEDGOR AND LENDER EACH ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO LENDER TO ENTER INTO A BUSINESS RELATIONSHIP WITH PLEDGOR. PLEDGOR REPRESENTS AND WARRANTS THAT IT HAS REVIEWED THIS WAIVER WITH THEIR LEGAL COUNSEL, AND THAT SUCH WAIVER IS KNOWINGLY AND VOLUNTARILY GIVEN FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED, EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, REPLACEMENTS, REAFFIRMATIONS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, OR ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

WITH RESPECT TO ANY ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT, PLEDGOR SHALL AND HEREBY DOES SUBMIT TO THE NON EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA LOCATED IN THE STATE OF NEW YORK (AND ANY APPELLATE COURTS TAKING APPEALS THEREFROM). PLEDGOR HEREBY WAIVES AND AGREES NOT TO ASSERT, AS A DEFENSE IN ANY ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, (A) THAT THEY ARE NOT SUBJECT TO SUCH JURISDICTION OR THAT SUCH ACTION, SUIT OR PROCEEDING MAY NOT BE BROUGHT OR IS NOT MAINTAINABLE IN THOSE COURTS OR THAT THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS MAY NOT BE ENFORCED IN OR BY THOSE COURTS OR

THAT THEY ARE EXEMPT OR IMMUNE FROM EXECUTION, (B) THAT THE ACTION, SUIT OR PROCEEDING IS BROUGHT IN AN INCONVENIENT FORUM OR (C) THAT THE VENUE OF THE ACTION, SUIT OR PROCEEDING IS IMPROPER. IN THE EVENT ANY SUCH ACTION, SUIT, PROCEEDING OR LITIGATION IS COMMENCED, PLEDGORS AGREE THAT SERVICE OF PROCESS MAY BE MADE, AND PERSONAL JURISDICTION OVER PLEDGORS OBTAINED, BY SERVICE OF A COPY OF THE SUMMONS, COMPLAINT AND OTHER PLEADINGS REQUIRED TO COMMENCE SUCH LITIGATION UPON PLEDGOR AT THE ADDRESS OF PLEDGOR.

SECTION 26. **Governing Law**.   Unless otherwise specified herein, this Agreement shall be governed by, construed and interpreted under the laws of the State of New York, provided that to the extent that any such laws may now or hereafter be preempted by Federal Law, such Federal Law shall so govern and be controlling and provided further that the laws of the state where the Collateral is located shall govern as to creation, priority and enforcement of liens and security interests in property located in such state. The Borrower hereby submits to the jurisdiction of the state and federal courts located in the State and agree that the Lender may, at its option, enforce its rights under the Loan Documents in such courts.

SECTION 27. **Special Damages**.   No claim may be made by Pledgor against Lender, its affiliates and its respective directors, officers, employees, or attorneys for any special, indirect or consequential damages ("Special Damages") in respect of any breach or wrongful conduct (whether the claim therefor is based on contract, tort or duty imposed by law) in connection with, arising out of, or in any way related to the transactions contemplated or relationship established by this Agreement, or any act, omission or event occurring in connection herewith or therewith; and to the fullest extent permitted by law Pledgor hereby waives, releases and agrees not to sue upon any such claim for Special Damages, whether or not accrued and whether or not known or suspected to exist in its favor.

SECTION 28. **Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original for all purposes, and all such counterparts shall together constitute but one and the same instrument. Additionally, any signature transmitted via facsimile may be deemed an original.

[SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, Pledgor and Lender have caused this Agreement to be executed and delivered as of the date first above written.

**PLEDGOR:**

Chouk Ng
_____

Wilson Ng
_____

Steven Ng
_____

[LENDER'S SIGNATURE PAGE TO PLEDGE]

LENDER:

BOWERY MEZZ LLC

By: _____
Name: Doris Shen
Title: Authorized Signatory

**EXHIBIT A**

**LIST OF PLEDGED MEMBERSHIP INTERESTS**

| Name & Address | Percentage of Membership Interests |
| --- | --- |
| Chouk Ng<br>2 Bowery, Apartment 2<br>New York, New York 10013 | 34% |
| Wilson Ng<br>26 Bowery, 5th Floor<br>New York, New York 10013 | 33% |
| Steven Ng<br>26 Bowery, 5th Floor<br>New York, New York 10013 | 33% |

**EXHIBIT B**

(see attached)

_____ ____, 20____

_____
_____
_____

Ladies and Gentlemen:

Reference is made to the Membership Interest Pledge, Assignment and Security Agreement dated as of the date hereof (the "**Pledge Agreement**") between all of the members (collectively, the "**Pledgor**") of 2 BOWERY HOLDING LLC, as Pledgor, and you, as Lender. Capitalized terms used but not defined herein have the meanings provided in the Pledge Agreement.

In connection with the pledge of the Collateral to you by the Pledgor, the undersigned hereby represents, warrants, covenants and agrees with you as follows:

(I)        In accordance with the Pledgor's instructions, the undersigned has registered on its books and records your security interest in the Pledged Interest; no other lien on such Pledged Interest is registered on the books and records of the undersigned;

(ii)        The undersigned shall deliver directly to you at your address set forth in the Pledge Agreement, any and all instruments and/or certificates evidencing any right, option or warrant, and all new, additional or substituted securities issued to, or to be received by, the Pledgor by virtue of its ownership of the Pledged Interest issued by the undersigned or upon exercise by the Pledgor of any option, warrant or right attached to such Pledged Interest;

(iii)        The undersigned will not issue any additional membership interests or securities without the prior written consent of Lender;

(iv)        After the occurrence of an Event of Default, the undersigned shall pay directly to you any and all distributions (cash or otherwise) which might be declared and payable (including any unpaid distributions accrued prior to the date hereof) on any of the Pledged Interests or any of the other Collateral issued by the undersigned;

(v)        At any time upon and during the continuance of an Event of Default, upon your written instructions, the undersigned shall register the transfer of such Pledged Interests to you or your nominee, as applicable;

(vi)        The Pledged Interest has been duly authorized and validly issued and is not subject to, nor will the undersigned at any time permit it to become subject to, any restrictions governing its issuance, transfer, ownership or control other than those currently set forth in its operating agreement; and

(vii)        The undersigned will comply with your instructions relating to the Pledged Interest without the need for further consent from Pledgor provided such instructions are in accordance with the Loan Documents.

The undersigned agrees that, if at any time you shall determine to exercise your right to sell all or any of the Collateral issued by the undersigned, the undersigned will, upon your request and at the Pledgor's expense:

(a)        provide you with such other information and projections as may be necessary or, in your opinion, advisable to enable you to effect the sale of such Collateral;

(b)        do or cause to be done all such other acts and things as may be necessary to make the sale of such Collateral or any part thereof valid and binding and in compliance with applicable law; and

(c)        do or cause to be done all such other acts and things as may be necessary to constitute you or your designees or transferees a member of the undersigned.

Notwithstanding anything contained in the operating agreement or any other document governing the formation, management and operation of **2 BOWERY HOLDING LLC** (the "LLC"), the LLC hereby consents and agrees to the security interest in the Pledged Interests and Collateral created by the Pledge Agreement and the transfer to you or your nominee following an Event of Default.

You are hereby authorized, in connection with any sale of the Collateral issued by the undersigned, to deliver or otherwise disclose to any prospective purchaser of such Collateral (I) any information and projections provided to you pursuant to subsection (a) above and (ii) any other information in your possession relating to the undersigned or such Collateral.

Very truly yours,

**2 BOWERY HOLDING LLC**
a New York limited liability company

By: _____
Name: Chouk Ng
Title:   Member

By: _____
Name: Wilson Ng
Title:   Managing Member

By: _____
Name: Steven Ng
Title:   Member

**EXHIBIT C**

(see attached)

CERTIFICATE OF LIMITED LIABILITY COMPANY INTERESTS IN
**2 BOWERY HOLDING LLC**

THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY STATE OR FOREIGN SECURITIES LAWS. THEY MAY NOT BE SOLD OR OFFERED FOR SALE IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT AS TO THE SECURITIES UNDER THE SECURITIES ACT AND ANY APPLICABLE STATE AND FOREIGN SECURITIES LAW OR AN EXEMPTION FROM REGISTRATION IS AVAILABLE OR AS OTHERWISE PERMITTED UNDER THE COMPANY'S LIMITED LIABILITY COMPANY AGREEMENT DATED AS OF _____ ____, 20____, (AS THE SAME MAY BE AMENDED AND/OR RESTATED FROM TIME TO TIME). ADDITIONALLY, THE TRANSFER OF THESE SECURITIES IS SUBJECT TO THE CONDITIONS SPECIFIED IN SUCH AGREEMENT, AND, TO THE FULLEST EXTENT PERMITTED BY LAW, NO TRANSFER OF THESE SECURITIES SHALL BE VALID OR EFFECTIVE UNTIL SUCH CONDITIONS HAVE BEEN FULFILLED.

## CERTIFICATE EVIDENCING

## UNITS/LIMITED LIABILITY COMPANY INTERESTS

No. 0001

In accordance with the Limited Liability Company Agreement of 2 BOWERY HOLDING LLC (as amended from time to time, the "Company Agreement"), **2 BOWERY HOLDING LLC**, a New York limited liability company (the "Company"), hereby certifies that CHOUK NG. (the "Holder"), is the registered owner of 34% of the limited liability company interests in the Company (the "Units") transferable on the books of the Company, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. The rights, preferences and limitations of the Units are set forth in, and this Certificate and the Units represented hereby are issued and shall in all respects be subject to the terms and provisions of, the Company Agreement. Copies of the Company Agreement are on file at, and will be furnished without charge on delivery of written request to the Company at, the principal office of the Company located at c/o Wilson Ng, 26 Bowery, New York, New York 10013. Capitalized terms used herein but not defined shall have the meaning given them in the Company Agreement.

The Holder, by accepting this Certificate, is deemed to have (i) requested admission as, and agreed to become, a Member and to have agreed to comply with and be bound by and to have executed the Company Agreement, (ii) represented and warranted that the Holder has all right, power and authority and, if an individual, the capacity necessary to enter into the Company Agreement, (iii) made the waivers and given the consents and approvals contained in the Company Agreement.

This certificate evidences a limited liability company interest in **2 BOWERY HOLDING LLC** and shall constitute "securities" within the meaning of, and governed by, (i) Article 8 of the Uniform Commercial Code (including Section 8-102(a)(15) thereof) as in effect from time to time in the State of New York, and (ii) Article 8 of the Uniform Commercial Code of any other applicable jurisdiction that now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995 (and each limited liability company interest in the Company shall be treated as such a "security" for all such purposes, including, without limitation perfection of the security interest therein under Articles 8 and 9 of each applicable Uniform Commercial Code as the Company has "opted-in" to such provisions).

Dated: _____

**2 BOWERY HOLDING LLC**
a New York limited liability company

By: _____
Name: Chouk Ng
Title:   Member


By: _____
Name:  Wilson Ng
Title:   Managing Member


By: _____
Name: Steven Ng
Title:   Member

CERTIFICATE OF LIMITED LIABILITY COMPANY INTERESTS IN
**2 BOWERY HOLDING LLC**

THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY STATE OR FOREIGN SECURITIES LAWS. THEY MAY NOT BE SOLD OR OFFERED FOR SALE IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT AS TO THE SECURITIES UNDER THE SECURITIES ACT AND ANY APPLICABLE STATE AND FOREIGN SECURITIES LAW OR AN EXEMPTION FROM REGISTRATION IS AVAILABLE OR AS OTHERWISE PERMITTED UNDER THE COMPANY'S LIMITED LIABILITY COMPANY AGREEMENT DATED AS OF _____ ____, 20___, (AS THE SAME MAY BE AMENDED AND/OR RESTATED FROM TIME TO TIME). ADDITIONALLY, THE TRANSFER OF THESE SECURITIES IS SUBJECT TO THE CONDITIONS SPECIFIED IN SUCH AGREEMENT, AND, TO THE FULLEST EXTENT PERMITTED BY LAW, NO TRANSFER OF THESE SECURITIES SHALL BE VALID OR EFFECTIVE UNTIL SUCH CONDITIONS HAVE BEEN FULFILLED.

## CERTIFICATE EVIDENCING

### UNITS/LIMITED LIABILITY COMPANY INTERESTS

No. 0002

In accordance with the Limited Liability Company Agreement of 2 BOWERY HOLDING LLC (as amended from time to time, the "Company Agreement"), **2 BOWERY HOLDING LLC**, a New York limited liability company (the "Company"), hereby certifies that WILSON NG. (the "Holder"), is the registered owner of 33% of the limited liability company interests in the Company (the "Units") transferable on the books of the Company, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. The rights, preferences and limitations of the Units are set forth in, and this Certificate and the Units represented hereby are issued and shall in all respects be subject to the terms and provisions of, the Company Agreement. Copies of the Company Agreement are on file at, and will be furnished without charge on delivery of written request to the Company at, the principal office of the Company located at c/o Wilson Ng, 26 Bowery, New York, New York 10013. Capitalized terms used herein but not defined shall have the meaning given them in the Company Agreement.

The Holder, by accepting this Certificate, is deemed to have (i) requested admission as, and agreed to become, a Member and to have agreed to comply with and be bound by and to have executed the Company Agreement, (ii) represented and warranted that the Holder has all right, power and authority and, if an individual, the capacity necessary to enter into the Company Agreement, (iii) made the waivers and given the consents and approvals contained in the Company Agreement.

This certificate evidences a limited liability company interest in **2 BOWERY HOLDING LLC** and shall constitute "securities" within the meaning of, and governed by, (i) Article 8 of the Uniform Commercial Code (including Section 8-102(a)(15) thereof) as in effect from time to time in the State of New York, and (ii) Article 8 of the Uniform Commercial Code of any other applicable jurisdiction that now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995 (and each limited liability company interest in the Company shall be treated as such a "security" for all such purposes, including, without limitation perfection of the security interest therein under Articles 8 and 9 of each applicable Uniform Commercial Code as the Company has "opted-in" to such provisions).

Dated:  _4/26/19_

                    **2 BOWERY HOLDING LLC**
                    a New York limited liability company

                    By: _____
                    Name: Chouk Ng
                    Title:  Member

                    By: _____
                    Name: Wilson Ng
                    Title:   Managing Member

                    By: _____
                    Name: Steven Ng
                    Title:  Member

CERTIFICATE OF LIMITED LIABILITY COMPANY INTERESTS IN
**2 BOWERY HOLDING LLC**

THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY STATE OR FOREIGN SECURITIES LAWS. THEY MAY NOT BE SOLD OR OFFERED FOR SALE IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT AS TO THE SECURITIES UNDER THE SECURITIES ACT AND ANY APPLICABLE STATE AND FOREIGN SECURITIES LAW OR AN EXEMPTION FROM REGISTRATION IS AVAILABLE OR AS OTHERWISE PERMITTED UNDER THE COMPANY'S LIMITED LIABILITY COMPANY AGREEMENT DATED AS OF _____ ____, 20____, (AS THE SAME MAY BE AMENDED AND/OR RESTATED FROM TIME TO TIME). ADDITIONALLY, THE TRANSFER OF THESE SECURITIES IS SUBJECT TO THE CONDITIONS SPECIFIED IN SUCH AGREEMENT, AND, TO THE FULLEST EXTENT PERMITTED BY LAW, NO TRANSFER OF THESE SECURITIES SHALL BE VALID OR EFFECTIVE UNTIL SUCH CONDITIONS HAVE BEEN FULFILLED.

## CERTIFICATE EVIDENCING

## UNITS/LIMITED LIABILITY COMPANY INTERESTS

No. 0003

In accordance with the Limited Liability Company Agreement of 2 BOWERY HOLDING LLC (as amended from time to time, the "Company Agreement"), **2 BOWERY HOLDING LLC**, a New York limited liability company (the "Company"), hereby certifies that STEVEN NG. (the "Holder"), is the registered owner of 33% of the limited liability company interests in the Company (the "Units") transferable on the books of the Company, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. The rights, preferences and limitations of the Units are set forth in, and this Certificate and the Units represented hereby are issued and shall in all respects be subject to the terms and provisions of, the Company Agreement. Copies of the Company Agreement are on file at, and will be furnished without charge on delivery of written request to the Company at, the principal office of the Company located at c/o Wilson Ng, 26 Bowery, New York, New York 10013. Capitalized terms used herein but not defined shall have the meaning given them in the Company Agreement.

The Holder, by accepting this Certificate, is deemed to have (i) requested admission as, and agreed to become, a Member and to have agreed to comply with and be bound by and to have executed the Company Agreement, (ii) represented and warranted that the Holder has all right, power and authority and, if an individual, the capacity necessary to enter into the Company Agreement, (iii) made the waivers and given the consents and approvals contained in the Company Agreement.

This certificate evidences a limited liability company interest in **2 BOWERY HOLDING LLC** and shall constitute "securities" within the meaning of, and governed by, (i) Article 8 of the Uniform Commercial Code (including Section 8-102(a)(15) thereof) as in effect from time to time in the State of New York, and (ii) Article 8 of the Uniform Commercial Code of any other applicable jurisdiction that now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995 (and each limited liability company interest in the Company shall be treated as such a "security" for all such purposes, including, without limitation perfection of the security interest therein under Articles 8 and 9 of each applicable Uniform Commercial Code as the Company has "opted-in" to such provisions).

Dated: _____4/26/19_____

**2 BOWERY HOLDING LLC**
a New York limited liability company

By: _____
Name: Chouk Ng
Title:  Member

By: _____
Name: Wilson Ng
Title:  Managing Member

By: _____
Name: Steven Ng
Title:  Member

## **EXHIBIT D**

(see attached)

## LIMITED LIABILITY COMPANY POWER

FOR VALUE RECEIVED, WILSON NG ("Pledgor") hereby sells, assigns and transfers unto _____ all of the outstanding and issued limited liability company interest of **2 BOWERY HOLDING LLC**, a New York limited liability company ("Company"), standing in the name of Pledgor on the books of Company represented by Certificate No. 0002 and does hereby irrevocably constitute and appoint attorney to transfer the said shares on the books of Company with full power of substitution in the premises.

Dated: _____ 4/26 _____, 20 19

_____
Name:  Wilson Ng

In the presence of:

_____
Name:

## LIMITED LIABILITY COMPANY POWER

FOR VALUE RECEIVED, CHOUK NG ("Pledgor") hereby sells, assigns and transfers unto
_____ all of the outstanding and issued limited
liability company interest of **2 BOWERY HOLDING LLC**, a New York limited liability
company ("Company"), standing in the name of Pledgor on the books of Company represented by
Certificate No. 0001 and does hereby irrevocably constitute and appoint attorney to transfer the
said shares on the books of Company with full power of substitution in the premises.

Dated: _____ 4/26 , 20 19

_____
Name:  Chouk Ng

In the presence of:

_____
Name:

## LIMITED LIABILITY COMPANY POWER

FOR VALUE RECEIVED, STEVEN NG ("Pledgor") hereby sells, assigns and transfers unto _____ all of the outstanding and issued limited liability company interest of **2 BOWERY HOLDING LLC**, a New York limited liability company ("Company"), standing in the name of Pledgor on the books of Company represented by Certificate No. 0003 and does hereby irrevocably constitute and appoint attorney to transfer the said shares on the books of Company with full power of substitution in the premises.

Dated: _____ 4/26 ___, 20 19

_____

Name:  Steven Ng

In the presence of:

_____

Name:

# **EXHIBIT B**

AMENDMENT TO AMENDED AND RESTATED LIMITED LIABILITY COMPANY
OPERATING AGREEMENT AS IN EFFECT ON THE DATE HEREOF OF

2 BOWERY HOLDING LLC

This First Amendment ("**Amendment**") to the Amended and Restated Operating Agreement of 2 Bowery Holdings LLC ("**Company**") is made as of the 31st day of March, 2022 by Bowery Mezz LLC, a New York limited liability company ("**Lender**") as attorney-in-fact of each of Wilson Ng ("**Wilson**"), Chouk Ng ("**Chouk**"), and Steven Ng ("**Steven**"; and together with Wilson and Chouk, collectively, "**Members**"), pursuant to a Power of Attorney coupled with an interest granted to Lender by each of the Members pursuant to that certain Membership Interest Pledge, Assignment and Security Agreement ("**Pledge Agreement**") dated as of April 26, 2019 by the Members to Lender.

W I T N E S S E T H:

WHEREAS, the Company is governed by an Amended and Restated Limited Liability Company Operating Agreement dated effective as of April 26, 2019 ("**Agreement**"), by and among the Members; and

WHEREAS, the Members constitute all of the Members of the Company; and

WHEREAS, the Lender made a loan in the original principal amount of $400,000.00 ("**Loan**") to the Company and 26 Bowery LLC, a New York limited liability company ("**26 Bowery**"; and together with the Company, collectively, "**Borrower**"), which Loan is evidenced by (i) that certain $400,000.00 Promissory Note dated April 26, 2019 ("**Mezz Note**"), (ii) that certain General Security Agreement, dated as of April 26, 2019, by the Borrower in favor of the Lender ("**Mezz Agreement**"), (iii) the Pledge Agreement, and (iv) that certain Guaranty of Payment, dated as of April 26, 2019, made by the Members to the Lender ("**Guaranty**"; and together with the Mezz Note, the Mezz Agreement, the Pledge Agreement and all other documents evidencing and securing the Loan, collectively referred to hereafter as "**Mezz Loan Documents**"); and

WHEREAS, pursuant to the Pledge Agreement, the Members have pledged to the Lender, and the Lender has a perfected security interest in, among other assets, all membership interests in the Company represented by those certain limited liability company certificates of the Company; and

WHEREAS, certain events of default exist under the Mezz Loan Documents for, among other things, failure to pay off the Mezz Loan by the Maturity Date of May 1, 2021; and pursuant to that certain letter dated July 1, 2021, Borrower was notified, that certain events of default exist in connection with that certain $8,200,000.00 Consolidated and Restated Mortgage Note ("**Senior Note**") and that certain Consolidation, Modification and Extension Agreement ("**Mortgage**"), together with the Senior Note, "**Mortgage Loan**") by and between Double Bowery Funding LLC and the Borrower, which Mortgage Loan is cross collateralized with the

Mezz Loan pursuant to Section 7(k) of the Pledge Agreement; and

WHEREAS, by reason of the foregoing events of default continuing, the Lender is exercising its rights pursuant to Section 6 of the Pledge Agreement to exercise the Management Rights under Section 2(a) of the Pledge Agreement to, among other things, vote with respect to the Collateral (as defined in the Pledge Agreement) and manage the affairs of the Company and to exercise any election (including, but not limited to, election of remedies, the filing of any petition for reorganization or dissolution of the Company, and the exercise of the Company's rights as debtor-in-possession in the event the Company files a petition under Title 11 of the United States Code); and

WHEREAS, in accordance with the terms and conditions of the Pledge Agreement and the other Mezz Loan Documents, Lender in its capacity as attorney-in-fact for the Members desires to cause that this Amendment to the Agreement be executed and delivered; and

NOW, THEREFORE, the undersigned, being the all of the Members of the Company acting by their attorney-in-fact, hereby agree as follows:

1.    Supersede; Applicability; Terms. The following provisions are hereby adopted to amend and supersede any contrary provisions of the Agreement. Any capitalized terms used herein but not defined shall have the meanings ascribed to them in the Mezz Loan Documents. For the avoidance of doubt, this Amendment amends and supersedes any and all prior amendments to the Company's operating agreement with respect to the subject matter hereof.

2.    Section 5.1.1 of the Agreement, and any other provision of the Agreement that designates the Managing Member as a Manager of the Company, is hereby amended and restated in its entirety as follows:

"The Company shall be managed by a manager who shall be independent of the Members and the Lender ("**Independent Manager**") to be appointed by the Members from time to time. The Independent Manager shall have the complete power and authority to manage and operate the Company, including, without limitation, the right to file any petition for reorganization or dissolution of the Company, and exercise the Company's rights as debtor-in-possession in the event the Independent Manager causes the Company to file a petition under Title 11 of the United States Code. In the exercise of its duties, the Independent Manager shall at all times act in a fiduciary capacity and exercise appropriate fiduciary duties that are in the best interests of the estate and all of its stakeholders in accordance with applicable law of the State of New York, and in the event of a filing of a case under Chapter 11, of Title 11 of the United States Code ("**Bankruptcy Code**"), in accordance with the Bankruptcy Code. RK Consultants LLC, by its member Brian Ryniker, is hereby appointed by the Members as the Independent Manager."

3.      All references in the Agreement to "Managing Member" or "Managing Members" shall hereinafter mean the Independent Manager.

4.      This Amendment shall be binding upon the Members of the Company and their respective successors and assigns.

5.      The Agreement, as amended hereby, shall continue to be in full force and effect, in accordance with its terms.

6.      THIS AMENDMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS ENTERED INTO AND TO BE PERFORMED ENTIRELY WITHIN SUCH STATE.

7.      This Amendment may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. Facsimile and/or emailed signatures on this Amendment and the electronic transmission thereof shall have the same binding force and effect as original ink signatures.

**[remainder of page intentionally blank – signature page follows]**

#11100408 v6 \030100 \0001

IN WITNESS WHEREOF, the undersigned have executed this Amendment as of the day and year first above written.

Wilson NG

BY: **BOWERY MEZZ LLC,**
**a New York limited liability company, as**
**Attorney-in-Fact**

By:_____
Name: Mark Levin
Title: Managing Member


Chouk NG

BY: **BOWERY MEZZ LLC,**
**a New York limited liability company, as**
**Attorney-in-Fact**

By:_____
Name: Mark Levin
Title: Managing Member


Steven NG

BY: **BOWERY MEZZ LLC,**
**a New York limited liability company, as**
**Attorney-in-Fact**

By:_____
Name: Mark Levin
Title: Managing Member


**Signature page to First Amendment to Amended and Restated Operating Agreement**

#11100408 v6 \030100 \0001

4

## AMENDMENT TO AMENDED AND RESTATED LIMITED LIABILITY COMPANY OPERATING AGREEMENT AS IN EFFECT ON THE DATE HEREOF OF

### 26 BOWERY LLC

This Amendment ("**Amendment**") to the Amended and Restated Operating Agreement of 26 Bowery LLC ("**Company**") is made as of the 31st day of March, 2022 by Bowery Mezz LLC, a New York limited liability company ("**Lender**") as attorney-in-fact of each of Wilson Ng ("**Wilson**"), Chouk Ng ("**Chouk**"), and Steven Ng ("**Steven**"; and together with Wilson and Chouk, collectively, "**Members**"), pursuant to a Power of Attorney coupled with an interest granted to Lender by each of the Members pursuant to that certain Membership Interest Pledge, Assignment and Security Agreement ("**Pledge Agreement**") dated as of April 26, 2019 by the Members to Lender.

### W I T N E S S E T H:

WHEREAS, the Company is governed by an Amended and Restated Limited Liability Company Operating Agreement dated effective as of April 26, 2019 ("**Agreement**"), by and among the Members; and

WHEREAS, the Members constitute all of the Members of the Company; and

WHEREAS, the Lender made a loan in the original principal amount of $400,000.00 ("**Loan**") to the Company and 2 Bowery Holding LLC, a New York limited liability company ("**2 Bowery**"; and together with the Company, collectively, "**Borrower**"), which Loan is evidenced by (i) that certain $400,000.00 Promissory Note dated April 26, 2019 ("**Mezz Note**"), (ii) that certain General Security Agreement, dated as of April 26, 2019, by the Borrower in favor of the Lender ("**Mezz Agreement**"), (iii) the Pledge Agreement, and (iv) that certain Guaranty of Payment, dated as of April 26, 2019, made by the Members to the Lender ("**Guaranty**"; and together with the Mezz Note, the Mezz Agreement, the Pledge Agreement and all other documents evidencing and securing the Loan, collectively referred to hereafter as "**Mezz Loan Documents**"); and

WHEREAS, pursuant to the Pledge Agreement, the Members have pledged to the Lender, and the Lender has a perfected security interest in, among other assets, all membership interests in the Company represented by those certain limited liability company certificates of the Company; and

WHEREAS, certain events of default exist under the Mezz Loan Documents for, among other things, failure to pay off the Mezz Loan by the Maturity Date of May 1, 2021; and pursuant to that certain letter dated July 1, 2021, Borrower was notified, that certain events of default exist in connection with that certain $8,200,000.00 Consolidated and Restated Mortgage Note ("**Senior Note**") and that certain Consolidation, Modification and Extension Agreement ("**Mortgage**"), together with the Senior Note, "**Mortgage Loan**") by and between Double Bowery Funding LLC and the Borrower, which Mortgage Loan is cross collateralized with the

#11119995 v2 \030100 \0001

1

Mezz Loan pursuant to Section 7(k) of the Pledge Agreement; and

WHEREAS, by reason of the foregoing events of default continuing, the Lender is exercising its rights pursuant to Section 6 of the Pledge Agreement to exercise the Management Rights under Section 2(a) of the Pledge Agreement to, among other things, vote with respect to the Collateral (as defined in the Pledge Agreement) and manage the affairs of the Company and to exercise any election (including, but not limited to, election of remedies, the filing of any petition for reorganization or dissolution of the Company, and the exercise of the Company's rights as debtor-in-possession in the event the Company files a petition under Title 11 of the United States Code); and

WHEREAS, in accordance with the terms and conditions of the Pledge Agreement and the other Mezz Loan Documents, Lender in its capacity as attorney-in-fact for the Members desires to cause that this Amendment to the Agreement be executed and delivered; and

NOW, THEREFORE, the undersigned, being the all of the Members of the Company acting by their attorney-in-fact, hereby agree as follows:

1.    Supersede; Applicability; Terms. The following provisions are hereby adopted to amend and supersede any contrary provisions of the Agreement. Any capitalized terms used herein but not defined shall have the meanings ascribed to them in the Mezz Loan Documents. For the avoidance of doubt, this Amendment amends and supersedes any and all prior amendments to the Company's operating agreement with respect to the subject matter hereof.

2.    Section 5.1.1 of the Agreement, and any other provision of the Agreement that designates the Managing Member as a Manager of the Company, is hereby amended and restated in its entirety as follows:

"The Company shall be managed by a manager who shall be independent of the Members and the Lender ("**Independent Manager**") to be appointed by the Members from time to time. The Independent Manager shall have the complete power and authority to manage and operate the Company, including, without limitation, the right to file any petition for reorganization or dissolution of the Company, and exercise the Company's rights as debtor-in-possession in the event the Independent Manager causes the Company to file a petition under Title 11 of the United States Code. In the exercise of its duties, the Independent Manager shall at all times act in a fiduciary capacity and exercise appropriate fiduciary duties that are in the best interests of the estate and all of its stakeholders in accordance with applicable law of the State of New York, and in the event of a filing of a case under Chapter 11, of Title 11 of the United States Code ("**Bankruptcy Code**"), in accordance with the Bankruptcy Code. RK Consultants LLC, by its member Brian Ryniker, is hereby appointed by the Members as the Independent Manager."

#11119995 v2 \030100 \0001

2

3.      All references in the Agreement to "Managing Member" or "Managing Members" shall hereinafter mean the Independent Manager.

4.      This Amendment shall be binding upon the Members of the Company and their respective successors and assigns.

5.      The Agreement, as amended hereby, shall continue to be in full force and effect, in accordance with its terms.

6.      THIS AMENDMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS ENTERED INTO AND TO BE PERFORMED ENTIRELY WITHIN SUCH STATE.

7.      This Amendment may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. Facsimile and/or emailed signatures on this Amendment and the electronic transmission thereof shall have the same binding force and effect as original ink signatures.

**[remainder of page intentionally blank – signature page follows]**

IN WITNESS WHEREOF, the undersigned have executed this Amendment as of the day and year first above written.

Wilson NG

BY: **BOWERY MEZZ LLC,**
**a New York limited liability company, as**
**Attorney-in-Fact**

By:_____
Name: Mark Levin
Title: Managing Member

Chouk NG

BY: **BOWERY MEZZ LLC,**
**a New York limited liability company, as**
**Attorney-in-Fact**

By:_____
Name: Mark Levin
Title: Managing Member

Steven NG

BY: **BOWERY MEZZ LLC,**
**a New York limited liability company, as**
**Attorney-in-Fact**

By:_____
Name: Mark Levin
Title: Managing Member

**Signature page to First Amendment to Amended and Restated Operating Agreement**

#11119995 v2 \030100 \0001