UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In re:

**26 BOWERY LLC and**
**2 BOWERY HOLDING LLC**,

                              Debtors.
-------------------------------------------------------X

Chapter 11

Case No.:  22-10412 (MG) and
                    22-10413 (MG)
(Jointly Administered)


# JOINT PLAN OF REORGANIZATION PROPOSED BY 26 BOWERY LLC, 2 BOWERY HOLDING LLC, AND DOUBLE BOWERY FUNDING LLC


**LEECH TISHMAN**
**ROBINSON BROG, PLLC**
Attorneys for the Debtors
One Dag Hammarskjöld Plaza
885 Second Avenue, 3rd Floor
New York, New York 10017
Tel. No. 212 603 6300
Fred B. Ringel, Esq.
Clement Yee, Esq.


New York, New York
September 10, 2024

**MORRISON COHEN LLP**
Attorneys for Double Bowery
Funding LLC
909 Third Avenue, 27th Floor
New York, New York 10022
Tel. No. 212 753 8600
Joseph T. Moldovan, Esq.
David J. Kozlowski, Esq.

1

26 Bowery LLC, 2 Bowery Holding LLC, and Double Bowery Funding, LLC propose the following chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in Section 1.A.

## SECTION 1.        DEFINITIONS AND INTERPRETATION.

### A.    Definitions.

1.1    *2 Bowery* means 2 Bowery Holding LLC, a Debtor in these Chapter 11 Cases.

1.2    *2 Bowery Closing* means the closing of the 2 Bowery Sale Transaction.

1.3    *2 Bowery Closing Date* means the date of the 2 Bowery Closing.

1.4    *2 Bowery Property* means the real property and improvements thereon located at 2 Bowery, New York, New York (Block 162; Lot 61).

1.5    *2 Bowery Purchase Agreement* means a purchase agreement, in form and substance reasonably acceptable to 2 Bowery, a form of which is included in the Plan Supplement by and between 2 Bowery, as seller, and the 2 Bowery Purchaser, as buyer, which provides for the sale of the 2 Bowery Property, submitted at or prior to the Auction and determined by 2 Bowery pursuant to the Bid Procedures to reflect the highest or otherwise best offer for the 2 Bowery Property.

1.6    *2 Bowery Purchaser* means the successful bidder at the Auction sale for the 2 Bowery Property

1.7    *2 Bowery Sale Proceeds* means the proceeds from the 2 Bowery Sale Transaction (including the Carve -Out, if necessary) net of closing costs including but not limited to 2 Bowery's brokerage fees, title costs and other ordinary and necessary costs of, or credits related to, the transfer of title of the 2 Bowery Property.

1.8    *2 Bowery Sale Transaction* means the sale of the 2 Bowery Property pursuant to the Plan.

1.9    *2 Bowery Stalking Horse* means 1 Ludlow Three Points LLC.

1.10    *2 Bowery Stalking Horse* **Contract** means the Contract of Sale between 2 Bowery and 1 Ludlow Three Points LLC.  A copy of the 2 Bowery Stalking Horse Contract is attached to the Bid Procedures.

1.11    *26 Bowery* means 26 Bowery LLC, a Debtor in these Chapter 11 Cases.

2

1.12    ***26 Bowery Closing*** means the closing of the 26 Bowery Sale Transaction.

1.13    ***26 Bowery Closing Date*** means the date of the 26 Bowery Closing.

1.14    ***26 Bowery Property*** means the real property and improvements thereon located at 26 Bowery, New York, New York (Block 163; Lot 35).

1.15    ***26 Bowery Purchase Agreement*** means a purchase agreement, in form and substance reasonably acceptable to 26 Bowery, a form of which is included in the Plan Supplement by and between 26 Bowery, as seller, and the 26 Bowery Purchaser, as buyer, which provides for the sale of the 26 Bowery Property, submitted at or prior to the Auction and determined by 26 Bowery pursuant to the Bid Procedures to reflect the highest or otherwise best offer for the 26 Bowery Property.

1.16    ***26 Bowery Purchaser*** means the successful bidder at the Auction sale for the 26 Bowery Property.

1.17    ***26 Bowery Sale Proceeds*** means the proceeds from the 26 Bowery Sale Transaction (including the Carve -Out, if necessary) net of closing costs including but not limited to 26 Bowery's brokerage fees, title costs and other ordinary and necessary costs of, or credits related to, the transfer of title of the 26 Bowery Property.

1.18    ***26 Bowery Sale Transaction*** means the sale of the 26 Bowery Property pursuant to the Plan.

1.19    ***26 Bowery Stalking Horse*** means Double Bowery which will be submitting a credit bid of $3,750,000 pursuant to the Double Bowery Note and Double Mortgage and DIP Claim.  Double Bowery reserves the right to bid up the full amount of its Secured Claim.

1.20    ***Administrative Expense Claim***  means any Claim for costs and expenses of administration during the Chapter 11 Cases pursuant to sections 503(b) or 507(a)(2) of the Bankruptcy Code, including, (a) the actual and necessary costs and expenses incurred after the Commencement Date through the Effective Date of preserving the Estates and operating the business of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) Fee Claims; and (c) all fees and charges assessed against the Estates pursuant to section 1911 through 1930 of chapter 123 of title 28 of the United States Code.

3

1.21    ***Administrative Expense Claims Bar Date*** means the first Business Day that is 30 days following the Effective Date, except as otherwise specifically set forth in the Plan.

1.22    ***Administrative Expense Claims Objection Bar Date*** means the first Business Day that is 60 days following the Effective Date, except as otherwise specifically set forth in the Plan; provided that the Administrative Expense Claims Objection Bar Date may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Post-Effective Date Debtors after notice and a hearing.

1.23    ***Allowed*** means with reference to any Claim  (a) any Claim against any Debtor that has been listed by the Debtor in its Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed, (b) any Claim listed on the Schedules or included in a timely filed proof of Claim, as to which no objection to allowance has been, or subsequently is, interposed in accordance with section 7.9 hereof or prior to the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such Final Order is in favor of the respective holder, or (c) any Claim expressly allowed by a Final Order.

1.24    ***Auction*** means the auction for the sale of the 26 Bowery Property and 2 Bowery Property to be held in accordance with the Bid Procedures.

1.25    ***Available Cash*** means all Cash of the Debtors realized from its business operations, proceeds from the DIP Loan Agreement, the sale or other disposition (other than the 26 Bowery Sale Transaction and 2 Bowery Sale Transaction) of its assets, the interest earned on its invested funds, recoveries from Causes of Action or from any other source or otherwise.

1.26    ***Avoidance Action*** means any action commenced, or that may be commenced, before or after the Effective Date pursuant to section 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code.

1.27    ***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended from time to time, as applicable to these Chapter 11 Cases.

1.28    ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Case and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Case under section 151 of title 28 of the United States Code.

4853-3503-8512, v. 9

1.29    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Case, and any Local Rules of the Bankruptcy Court.

*1.30*    ***Bar Date Order*** means that certain *Order Establishing Deadline for Filing Proofs of Claim Against the Debtors and Approving the Form and Manner of Notice Thereof* entered on July 29, 2022 at ECF 80 which established September 7, 2022 as the last day for creditors to file claims against the Debtors' Estates and established September 27, 2022 as the last date for Governmental Units to file claims against the Debtor's estate.

*1.31*    ***Bid Procedures*** means the bid and auction procedures as approved by the Bankruptcy Court establishing, among other things, procedures for the Auction and the terms and conditions related to the 26 Bowery Sale Transaction and 2 Bowery Sale Transaction.

1.32    ***Business Day*** means any day other than a Saturday, a Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.33    ***Carve-Out*** means the Debtor's Available Cash, and to the extent the Available Cash is insufficient, Cash made available by Double Bowery either through carving out of its recovery sufficient Cash to fund the Plan if the proceeds from the sales of the Properties are otherwise insufficient or by contributing its own Cash to fund the Carve-Out. In such event, Double Bowery shall pay, to the extent unpaid, (i) Allowed Administrative Expense Claims, (ii) Allowed Fee Claims, (iii) Allowed Priority Claims, (iv) United States Trustee Fees, and (v) contribute $33,000.00 per Debtor from the 26 Bowery Sale Proceeds and 2 Bowery Sale Proceeds, as may be necessary, to fund the distribution to Allowed Class 3 and Class 4 General Unsecured Claims. The funds to satisfy the Carve-Out shall be funded or paid at the 26 Bowery Closing and 2 Bowery Closing, as necessary.

1.34    ***Cash*** means legal tender of the United States of America.

1.35    ***Causes of Action*** means any action, Claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Commencement Date, in contract or in tort, in law or in equity or pursuant to any other theory of law. Causes of Action also

4853-3503-8512, v. 9

includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Avoidance Action; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.36    ***Chapter 11 Cases*** means the jointly-administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on March 31, 2022 and styled *In re 26 Bowery LLC and 2 Bowery Holding LLC*, Case No. 22-10412 (MG) (Jointly Administered).

1.37    ***Claim*** has the meaning set forth in section 101(5) of the Bankruptcy Code.

1.38    ***Claims Objection Bar Date*** means the first Business Day that is 60 after the Effective Date; provided that the Claims Objection Bar Date may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Post-Effective Date Debtors.

1.39    ***Class*** means any group of Claims or Interests classified pursuant to Section 3.1 of the Plan.

1.40    ***Commencement Date*** means March 31, 2022.

1.41    ***Confirmation*** means the entry on the docket of the Chapter 11 Cases of the Confirmation Order.

1.42    ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

1.43    ***Confirmation Hearing*** means the hearing to be held by the Bankruptcy Court regarding Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

*1.44*    ***Confirmation Order*** means an order of the Bankruptcy Court confirming the Plan.

1.45    ***Consummation*** means the occurrence of the Effective Date of the Plan.

1.46    ***Cure Obligation*** means all (a) amounts (or such other amount as may be agreed upon by the parties under an Executory Contract or unexpired Lease) required to cure any monetary defaults; and (b) other obligations required to cure any non-monetary defaults under any Executory Contract or unexpired Lease that

6

is to be assumed by the Debtors and assigned to either the 26 Bowery Purchaser or 2 Bowery Purchaser, as applicable, pursuant to sections 365 or 1123 of the Bankruptcy Code.

1.47    *Debtor* means either 26 Bowery or 2 Bowery in its respective individual capacity as a debtor and debtor in possession in the Chapter 11 Cases.

1.48    *Debtors* mean 26 Bowery and 2 Bowery.

1.49    *DIP Claim* means any Claim of Double Bowery arising under the DIP Loan Agreement or the Final DIP Order.

1.50    *DIP Loan Agreement* means that certain Senior Secured Super-Priority Debtor-In-Possession Loan Agreement, as amended, supplemented, or otherwise modified (together with any exhibits attached thereto and other agreements related thereto, including, without limitation, all security agreements and all related or ancillary documents and agreements), by and among, 26 Bowery and 2 Bowery, as borrowers, and Double Bowery, as Lender.

1.51    *Disbursing Agent* means RK Consultants LLC, the Debtors' independent manager, the entity designated by the Plan and charged with the responsibility of making the payments under the Plan.

1.52    *Disclosure Statement* means the Disclosure Statement for the Plan which is prepared and distributed in accordance with sections 1125, 1126(b) and/or 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and/or other applicable law, as the same may be amended or modified from time to time.

1.53    *Disputed Claim* means with respect to a Claim or Interest, any such Claim or Interest (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, or (b) for which a Proof of Claim or Interest has been filed, to the extent the Debtor or any party in interest has interposed a timely objection or request for estimation before the Confirmation Date in accordance with the Plan, which objection or request for estimation has not been withdrawn or determined by a Final Order.

1.54    *Distribution Date* means a date or dates, as determined by the Disbursing Agent in accordance with the terms of the Plan, on which the Disbursing Agent makes a distribution to holders of Allowed Claims.

1.55    *Distribution Record Date* means the Effective Date of the Plan.

4853-3503-8512, v. 9

1.56    ***Double Bowery*** means Double Bowery Funding LLC in its capacity as in its capacity as the pre-petition lender to the Debtors and as lender under the DIP Loan Documents.

1.57    ***Double Bowery Mortgage*** means the mortgage and security interest in the Properties in the principal amount of the Double Bowery Note, which was duly recorded with the Office of the City Register for the City of New York against the 26 Bowery Property and 2 Bowery Property on June 5, 2019, under CRFN 2019000174251.

1.58    ***Double Bowery Note*** means the prepetition loan in the original principal amount of $8,200,000, evidenced by the Consolidated and Restated Mortgage Note dated as of April 26, 2019.

1.59    ***Double Bowery Secured Claim*** means the Secured Claim against the Properties, as held by Double Bowery as the holder of the Double Bowery Note and Double Bowery Mortgage.

1.60    ***Effective Date*** means the date on which all conditions to the effectiveness of the Plan set forth in Section 10 hereof have been satisfied or waived in accordance with the terms of the Plan.

1.61    ***Entity*** has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.62    ***Estate*** means as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon the commencement of each respective Debtor's Chapter 11 Case.

1.63    ***Estimated Fee Claim Escrow*** means the escrow account established by the Debtors no later than ten (10) days prior to the Effective Date, holding sufficient Cash to pay the Fee Claims in full, subject to their allowance by the Bankruptcy Court. The Estimated Fee Claim Escrow shall be funded from the 26 Bowery Sale Proceeds and 2 Bowery Sale Proceeds.

1.64    ***Exculpated Parties*** means collectively: (a) the Debtors; (b) RKC, LLC d/b/a RK Consultants LLC, the Debtors' Independent Manager, (c) Double Bowery, (d) the 26 Bowery Purchaser; (e) the 2 Bowery Purchaser; and (f) with respect to each of the foregoing entities in clauses (a) through (e), such Entities' successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and

such persons' respective heirs, executors, Estates, servants and nominees, in each case in their capacity as such.

1.65    ***Executory Contract*** means a contract to which a Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.66    ***Fee Claim*** means a Claim for professional services rendered or costs incurred on or after the Commencement Date through the Effective Date by professional persons retained by the Debtors pursuant to sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code in the Chapter 11 Case.

1.67    ***Final DIP Order*** means that certain *Final Order: (I) Authorizing Debtors to (A) Obtain Postpetition Financing and Utilize Cash Collateral Pursuant to 11 U.S.C. §§ 105, 362, 363, 364(c)(1), 364(d), and 364(e) and Fed. R. Bankr. P. 2002, 4001(c), 4001(d) and 9014, (B) Granting Adequate Protection to Prepetition Secured Lender, (C) Modifying the Automatic Stay, and (D) Granting Related Relief*, entered by the Bankruptcy Court in the Chapter 11 Cases on July 20, 2022 at ECF No. 69 as the same may have been modified or amended.

1.68    ***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

1.69    ***General Unsecured Claim*** means any unsecured Claim that is not entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court.

1.70    ***Governmental Unit*** has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.71    *Guarantors* means Chouk Ng and his estate, Wilson Ng, and Seven Ng.

1.72    *Guaranty* means the Guaranty of Payment dated April 26, 2019 made by Chouk Ng, Wilson Ng, and Steven Ng to Double Bowery.

1.73    *Impaired* means, with respect to a Claim, Interest or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.74    *Interests* means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all instruments evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interests in the Debtor that existed immediately before the Effective Date.

1.75    *Lease* means any valid lease of real property between the Debtors and their Tenants, if any.

1.76    *Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.77    *Person* means an individual, corporation, partnership, joint venture, association, Joint Stock Company, Limited Liability Company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit or other entity.

1.78    *Plan* means this chapter 11 plan of reorganization, including the exhibits hereto and the Plan Supplement, as the same may be amended or modified from time to time in accordance with Sections herein.

1.79    *Plan Proponents* means the Debtors and Double Bowery.

1.80    *Plan Supplement* means the compilation of documents and information, if any, required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; provided that, through the Effective Date, the Debtors shall have the right to amend any schedules, exhibits, and the other documents contained in, and exhibits to, the Plan Supplement.

1.81    *Plan Supplement Filing Deadline* means the date that is no later than three (3) Business Days before the deadline to vote on confirmation of the Plan.

1.82    *Post-Effective Date Debtors* means the Debtors after the Effective Date.

1.83    ***Priority Tax Claim*** means any unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.84    ***Properties*** means, collectively, the 26 Bowery Property and the 2 Bowery Property.

1.85    ***Pro Rata*** means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims and Disputed Claims within such Class.

1.86    ***Proof of Claim*** means a proof of Claim filed against a Debtor in its Chapter 11 Case.

1.87    ***Schedule of Cure Costs*** means the schedule of Executory Contracts and unexpired Leases, if any, to be assumed by a Debtor and assigned to the corresponding purchaser, to be filed with the Plan Supplement and/or the fully executed 26 Bowery Purchase Agreement or 2 Bowery Purchase Agreement, as applicable.

1.88    ***Schedules*** means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

1.89    ***Secured Claim*** means a Claim to the extent (i) secured by property of the Estate, the amount of which is equal to or less than the value of such property (A) as set forth in the Plan, (B) as agreed to by the holder of such Claim and the Debtor or (C) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

1.90    ***Tenants*** means all non-Debtor parties to Leases with the Debtors for residential or commercial units at the 26 Bowery Property or 2 Bowery Property.

1.91    ***Unimpaired*** means, with respect to a Claim, Interest or Class of Claims or Interests, that such Claim or Interest is not "impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

### B.    Interpretation; Application of Definitions and Rules of Construction.

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended,

waived or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained therein. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (4) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (5) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

## C.    Controlling Document

In the event of an inconsistency between the Plan and the Plan Supplement, except for the terms of the 26 Bowery Purchase Agreement and 2 Bowery Purchase, as applicable, the terms of the Plan shall control (unless stated otherwise in the Plan). The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

## SECTION 2.        ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.

### 2.1.    *Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim and the Debtors agree to different treatment, the Debtors shall pay to each holder of an Allowed Administrative Expense Claim, Cash in an amount equal to such Claim (plus statutory interest on such claim, if applicable), on or as soon thereafter as is reasonably practicable, the later of (a) the 26 Bowery Closing Date and 2 Bowery Closing Date, as applicable, and (b) the first Business Day after the date that is ten (10) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; provided that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary

12

course of business by the Debtors shall be paid by the Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court (including the Bar Date Order), requests for payment of Administrative Expense Claims, other than requests for payment of Fee Claims, must be filed and served on the Debtors no later than the Administrative Expense Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.

Holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims and that do not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors or their property, and the Administrative Expense Claims shall be deemed compromised, settled, and released as of the Effective Date. The Debtors must file and serve objections to Administrative Expense Claims on or before the Administrative Expense Claims Objection Bar Date.

2.2.    *Fee Claims.*

All Entities seeking an award by the Bankruptcy Court of Fee Claims shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date. No later than ten (10) days prior to the Effective Date, all entities holding claims for Fee Claims shall serve upon the Debtors a notice of the estimated amount of their unpaid Fee Claim and the Debtors shall segregate, into an Estimated Fee Claim Escrow, the amounts which are necessary to pay the amount of such Fee Claim, in full subject to Allowance by the Bankruptcy Court (i) upon the later of (A) the Effective Date and (B) the date upon which the order relating to any such Allowed Fee Claim is entered or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtors.  The Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

The Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

4853-3503-8512, v. 9

2.3.    *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the 26 Bowery Closing Date and 2 Bowery Closing Date, as applicable, the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and the date such Allowed Priority Tax Claim is due and payable in the ordinary course.

2.4    *DIP Claim*

The DIP Claim shall be Allowed in the full amount due and owing under the DIP Loan Agreement and the Final DIP Order. Except to the extent that the holder of the DIP Claim agrees in writing to a different treatment, the holder of the DIP Claim shall receive Cash in an amount equal to the full amount of such Claim on the earlier of the Effective Date or the 26 Bowery Closing Date and/or 2 Bowery Closing Date, provided that all proceeds of 26 Bowery Sale Transaction and 2 Bowery Sale Transaction or other disposition of the DIP Collateral (as defined in the Final DIP Order) shall be applied to reduce the DIP Claim as and when such proceeds are received by the Debtors, pursuant and subject to the provisions of the Final DIP Order and the DIP Loan Agreement. Upon the indefeasible payment in full in cash of the DIP Claim in accordance with the preceding sentence, all Liens and security interests granted pursuant to the DIP Loan Agreement shall be deemed cancelled and shall be of no further force and effect and the Allowed DIP Claim shall be deemed to be fully satisfied, settled, released, and compromised. Pursuant to the DIP Loan Agreement, all payments pursuant to Section 2.4 of this Plan shall be made to Double Bowery in accordance with the DIP Loan Agreement.

If Double Bowery is the successful bidder for the 26 Bowery Property pursuant to a credit bid in accordance with the Bid Procedures, Double Bowery shall receive, depending on the amount of the credit bit, the 26 Bowery Property in full satisfaction of the DIP Claim with respect to 26 Bowery's obligations under the DIP Loan Agreement and Final DIP Order.

The transfer of the 26 Bowery Property to Double Bowery will not satisfy any of the Guarantors' obligations under the Guaranty.

**SECTION 3.        CLASSIFICATION OF CLAIMS AND INTERESTS.**

3.1.    *Classification in General.*

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; provided that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

3.2    *Summary of Classification.*

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code and (c) deemed to reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and, thus, are excluded from the classes of Claims and Interests set forth in this Section 3.  All of the potential Classes for the Debtors are set forth herein. The Debtors may not have holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Section 4.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Double Bowery Secured Claim | Impaired | Yes |
| 2 | 2 Bowery Other Secured Claims | Unimpaired | No (presumed to accept) |
| 3 | 26 Bowery General Unsecured Claims Against 26 Bowery | Impaired | Yes |
| 4 | 2 Bowery General Unsecured Claims | Impaired | Yes |
| 5 | 26 Bowery Interests | Impaired | Yes |
| 6 | 2 Bowery Interests | Impaired | Yes |

3.3.    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

15

3.4.    *Elimination of Vacant Classes.*

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) or 1129(b) of the Bankruptcy Code with respect to that Class.

3.5.    *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court at the Confirmation Hearing to deem the Plan accepted by the holders of such Claims or Interests in such Class.

3.6.    **Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan, in accordance with Article 13 hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

**SECTION 4.        TREATMENT OF CLAIMS AND INTERESTS**.

4.1.    *Double Bowery Secured Claim (Class 1).*

(a)    *Classification*: Class 1 consists of the Double Bowery Secured Claim. The Double Bowery Secured Claim is a Secured Claim pursuant to the Double Bowery Note, which is secured by the Double Bowery Mortgage and constitutes a first priority security interest on both the 26 Bowery Property and 2 Bowery Property, subject only to the DIP Claim.

(b)    *Treatment*: The holder of the Double Bowery Secured Claim shall receive, subject to funding the Carve-Out to the extent required by the Plan or Confirmation Order, (i) Cash from the 26 Bowery Sale Proceeds or if Double Bowery is the successful bidder for the 26 Bowery Property pursuant to a credit bid in accordance with the Bid Procedures, Double Bowery shall receive the 26 Bowery Property and (ii) Cash from the 2 Bowery Sale Proceeds up to the amount of the

16

Allowed Double Bowery Secured Claim and the DIP Claim or (2).  If Double Bowery is the successful bidder for the 26 Bowery Property pursuant to a credit bid in accordance with the Bid Procedures, the transfer of the 26 Bowery Property to Double Bowery will be in full satisfaction of the Double Bowery Secured Claim with respect to 26 Bowery's obligations under the Double Bowery Mortgage and Double Bowery Note.

The transfer of the 26 Bowery Property to Double Bowery will not satisfy any of the Guarantors' obligations under the Guaranty.

(c)     *Voting*: Class 1 is Impaired and is entitled to vote to accept or reject the Plan.

4.2     ***2 Bowery Other Secured Claims (Class 2).***

(a)     *Classification*: Class 2 consists of 2 Bowery Other Secured Claims.

(b)     *Treatment*: Except to the extent that a holder of 2 Bowery Other Secured Claim agrees to less favorable treatment of such Claim, each holder of an Allowed 2 Bowery Other Secured Claim shall receive on the Effective Date, the remaining 2 Bowery Sale Proceeds, if any, after payment in full of all Allowed Administrative Claims (including Fee Claims), the DIP Claim, Allowed Priority Claims, and Allowed Claims in Class 1.

(c)     *Voting*: Class 2 is Impaired and is entitled to vote to accept or reject the Plan.

4.3.     ***26 Bowery General Unsecured Claims (Class 3).***

(a)     *Classification*: Class 3 consists of 26 Bowery General Unsecured Claims.

(b)     *Treatment*: After payment is made in full to holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Fee Claims, and Allowed Claims in class 1, on the 26 Bowery Closing Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Allowed General Unsecured Claim or has been paid before the Effective Date, each holder of an Allowed General Unsecured Claim in Class 3 shall receive, net of any setoffs allowed under section 7.6 of the Plan, in full and final satisfaction of such Claim, their pro rata share of the remaining Cash (or the Carve-Out) from the 26 Bowery Sale Proceeds, up to the full amount of their Allowed Claim.

(c)        *Voting*: Class 3 is Impaired and is entitled to vote to accept or reject the Plan.

4.4.    ***2 Bowery General Unsecured Claims (Class 4).***

(a)        *Classification*: Class 4 consists of 2 Bowery General Unsecured Claims.

(b)        *Treatment*: After payment is made in full to holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Fee Claims, and Allowed Claims in classes 1 and 2 on the 2 Bowery Closing Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Allowed General Unsecured Claim or has been paid before the Effective Date, each holder of an Allowed General Unsecured Claim in Class 4 shall receive, net of any setoffs allowed under section 7.6 of the Plan, in full and final satisfaction of such Claim, their pro rata share of the remaining Cash (or the Carve-Out) from the 2 Bowery Sale Proceeds, up to the full amount of their Allowed Claim.

(c)        *Voting*: Class 4 is Impaired and is entitled to vote to accept or reject the Plan.

4.5.    ***26 Bowery Interests (Class 5).***

(a)        *Classification*: Class 5 consists of Interests in 26 Bowery.

(b)        *Treatment*: On the Effective Date, or as soon thereafter as is reasonably practicable, Interests in 26 Bowery will be cancelled and will not receive any recovery on account of their Interests in 26 Bowery, provided however, if payment is made in full to holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Fee Claims and Allowed Claims in classes 1 and 3, Holders of Interests in 26 Bowery shall receive any remaining 26 Bowery Sale Proceeds, net of any setoffs allowed under section 7.6 of the Plan, but in no event will Class 5 receive any portion of the Carve-Out.

(c)        *Voting*: Class 5 is Impaired and is entitled to vote to accept or reject the Plan.

4.6.    ***2 Bowery Interests (Class 6).***

(a)        *Classification*: Class 6 consists of Interests in 2 Bowery.

(b)        *Treatment*: On the Effective Date, or as soon thereafter as is reasonably practicable, Interests in 2 Bowery will be cancelled and will not receive

18

any recovery on account of their Interests in 2 Bowery, provided however, if payment is made in full to holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Fee Claims and Allowed Claims in classes 1, 2, and 4, Holders of Interests in 2 Bowery shall receive any remaining 2 Bowery Sale Proceeds, net of any setoffs allowed under section 7.6 of the Plan, but in no event will Class 6 receive any portion of the Carve-Out.

(c)     *Voting*: Class 6 is Impaired and is entitled to vote to accept or reject the Plan.

## SECTION 5.          MEANS FOR IMPLEMENTATION.

### 5.1.   Plan Funding.

The Plan shall be funded by the 26 Bowery Sale Proceeds and 2 Bowery Sale Proceeds, including the Carve-Out to the extent required by the Plan or Confirmation Order.

Creditor distributions not made on the 26 Bowery Closing Date and 2 Bowery Closing Date will be made from the 26 Bowery Sale Proceeds and 2 Bowery Sale Proceeds by the Disbursing Agent in accordance with the terms of the Plan.

### 5.2.   The Sale

The Confirmation Order shall authorize and approve the 26 Bowery Sale Transaction and 2 Bowery Sale Transaction to their respective purchaser under sections 365, 1123(b)(4), 1129(b)(2)(A)(iii) and 1146(a) of the Bankruptcy Code.

### 5.3.   Other Transactions.

In the discretion of the Debtors, after the Effective Date, the Post-Effective Date Debtors may engage in any other transaction in furtherance of the Plan. Any such transactions may be effective as of the Effective Date pursuant to the Confirmation Order without any further action by the members of the Debtors.

### 5.4.   Withholding and Reporting Requirements.

(a)   *Withholding Rights*. In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements. Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility

19

for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution. Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b)  *Forms*. Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Disbursing Agent or such other Person designated by the Post-Effective Date Debtors (which entity shall subsequently deliver to the Disbursing Agent any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8, unless such Person is exempt under the tax Code and so notifies the Disbursing Agent. If such request is made by the Post-Effective Date Debtors or such other Person designated by the Post-Effective Date Debtors and the holder fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to the Debtors and any Claim in respect of such distribution shall be discharged and forever barred from assertion against any Debtors and their respective property.

### 5.5.    Exemption From Certain Transfer Taxes.

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan as confirmed by the Court, (including an instrument of transfer executed in furtherance of the 26 Bowery Sale Transaction and 2 Bowery Sale Transaction contemplated by the Plan), shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax due on the sale of the 26 Bowery Property and 2 Bowery Property in connection with or in furtherance of the Plan as confirmed by the Court and the funding requirements contained herein and shall not be subject to any state, local or federal law imposing such tax and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 5.6.    Effectuating Documents; Further Transactions.

On and after the Effective Date, the Post-Effective Date Debtors are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the

Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

### 5.7. **Preservation of Rights of Action.**

Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Debtors reserve any and all Causes of Action. On and after the Effective Date, the Post-Effective Date Debtors may pursue such Causes of Action in their sole discretion. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Post-Effective Date Debtors will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or consummation of the 26 Bowery Sale Transaction and 2 Bowery Sale Transaction. Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Post-Effective Date Debtors, shall retain and shall have, including through their authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of the Plan itself shall be resolved only by Confirmation of the Plan itself.

### 5.8. **Closing of the Chapter 11 Cases.**

After the Chapter 11 Cases of the Debtors have been fully administered, the Debtors shall seek authority from the Bankruptcy Court to close such Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## SECTION 6. GOVERNANCE.

On and after the Effective Date, the Debtors shall continue to be managed by RK Consultants LLC ("RKC").  After the Effective Date, RKC shall maintain the books and records for the Post-Effective Date Debtors but shall not be required to file tax returns for the Debtors. The Debtors' principals shall bear the sole responsibility for the filing of the Debtors' tax returns for as long as applicable law requires such returns to be filed. RKC shall turnover to the Debtors' principals copies of all of the post-Effective Date books and records for the completion of such tax returns to the extent applicable law requires such returns to be filed. Except

4853-3503-8512, v. 9

with the responsibility to provide copies of all post-Effective Date books and records to the Debtors' principals, RKC's duties shall terminate upon the entry of a Final Decree in these Chapter 11 Cases.

## SECTION 7.          DISTRIBUTIONS.

### 7.1.   *Distribution Record Date*.

As of the close of business on the Distribution Record Date, the transfer register for each of the Classes of Claims or Interests as maintained by the Debtors shall be deemed closed, and there shall be no further changes in the record of holders of any of the Claims or Interests. The Debtors shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.

### 7.2.   *Date of Distributions*

Except as otherwise provided herein, and other than the distributions to be made on the 26 Bowery Closing Date and 2 Bowery Closing Date, as applicable, the Post-Effective Date Debtors or the Disbursing Agent shall make all distributions to Holders of Allowed Claims as set forth in the Plan. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day but shall be deemed to have been completed as of the required date.

The Debtors shall reserve an amount sufficient to pay holders of Disputed Claims the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims. In the event the holders of Allowed Claims have not received payment in full on account of their Claims after the resolution of all Disputed Claims, then the Post-Effective Date Debtors shall make a final *pro rata* distribution to all holders of Allowed Claims.

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

### 7.3.   *Delivery of Distributions.*

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Debtors have determined the then current address of such holder, at which time such distribution shall be made to such holder without Interest; provided, however, such distributions

4853-3503-8512, v. 9

shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the Initial Distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Debtors to be used for the payment of any unpaid Fee Claims, with any funds remaining at the end of the case to be distributed to the Debtors.

### 7.4.    *Manner of Payment Under Plan.*

At the option of the Debtors, any Cash payment to be made hereunder may be made by a check or wire transfer.

### 7.5.    *Minimum Cash Distributions.*

The Debtors shall not be required to make any payment to any holder of an Allowed Claim on any Distribution Date of Cash less than $100.00; provided, however, that if any distribution is not made pursuant to this Section 7.5, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim. The Debtors shall not be required to make any final distributions of Cash less than $50.00 to any holder of an Allowed Claim. If either (a) all Allowed Claims (other than those whose distributions are deemed undeliverable hereunder) have been paid in full or (b) the amount of any final distributions to holders of Allowed Claims would be $50.00 or less and the aggregate amount of Cash available for distributions to holders of Allowed General Unsecured Claims is less than $2,500.00, then no further distribution shall be made by the Post-Effective Date Debtors and any surplus Cash shall be utilized to pay down any unpaid legal fees incurred by Debtors' counsel post-confirmation.

### 7.6.    *Setoffs.*

The Debtors may, but shall not be required to, set off against any Claim, any Claims of any nature whatsoever that the Debtors may have against the holder of such Claim; provided that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such Claim the Debtors may have against the holder of such Claim.

### 7.7.    *Distributions After Effective Date.*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

4853-3503-8512, v. 9

7.8.    *Allocation of Distributions Between Principal and Interest.*

Except as otherwise provided in this Plan, to the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

7.9.    *Payment of Disputed Claims.*

As Disputed Claims are resolved pursuant to Section 8 hereof, the Post-Effective Date Debtors shall make distributions on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date. Such distributions shall be made on the first Distribution Date that is at least forty-five (45) days after the date on which a Disputed Claim becomes an Allowed Claim, or on an earlier date selected by the Debtors in the Debtors' sole discretion.

## SECTION 8.  PROCEDURES FOR DISPUTED CLAIMS.

8.1.    *Allowance of Claims.*

After the Effective Date, the Debtors shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim, except with respect to any Claim deemed Allowed under this Plan. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim.

8.2.    *Objections to Claims.*

As of the Effective Date, objections to and requests for estimation of, Claims against the Debtors may be interposed and prosecuted only by the Debtors. Such objections and requests for estimation shall be served and filed (a) on or before the 60th day following the later of (i) the Effective Date and (ii) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (b) such later date as ordered by the Bankruptcy Court upon motion filed by the Debtors.

24

8.3. *Estimation of Claims.*

The Debtors may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or Post-Effective Date Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or Post-Effective Date Debtors, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

8.4. *No Distributions Pending Allowance.*

If an objection to a Claim is filed as set forth in Section 8, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

8.5. *Resolution of Claims.*

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their estates may hold against any Person, without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith. The Debtors or their successor may pursue such retained Claims, rights, Causes of Action, suits or proceedings, as appropriate, in accordance with the best interests of the Debtors.

8.6. *Disallowed Claims.*

All Claims held by persons or entities against whom or which any of the Debtors or the Post-Effective Date Debtors have commenced a proceeding asserting

4853-3503-8512, v. 9

a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549 and/or 550 of the Bankruptcy Code shall be deemed "disallowed" Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant to this section shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Debtors or the Post-Effective Date Debtors from such party have been paid.

## SECTION 9.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

### 9.1.  *Rejection of Executory Contracts and Unexpired Leases.*

As of the 26 Bowery Closing Date and 2 Bowery Closing Date, as applicable, except as otherwise provided in the Plan or the 26 Bowery Purchase Agreement and 2 Bowery Purchase Agreement, as applicable, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code.

### 9.2.  *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be filed with Bankruptcy Court and served on the Debtors no later than thirty (30) days after the earlier of the Effective Date or the effective date of rejection of such Executory Contract or Unexpired Lease. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Debtors, no later than thirty (30) days after service of the Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

**Any holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely filed as set forth in the paragraph above shall not (1) be treated as a creditor with respect to such Claim, (2) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (3) participate in any distribution in these Chapter 11 Cases on account of such Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, or the property for any of the foregoing without the need for any objection by the Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease**

26

**shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.**

All Allowed Claims arising from the rejection of the Debtors' prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

9.3.   Assumption and Assignment of Executory Contracts and Unexpired Leases.

On the Effective Date, any Executory Contracts and Unexpired Leases to which either 26 Bowery or 2 Bowery is a party as set forth in either the 26 Bowery Purchase Agreement or 2 Bowery Purchase Agreement, shall be deemed assumed and assigned to the Reorganized Debtor in accordance with Section 365 of the Bankruptcy Code.
.
9.4.   Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.

Any Cure Obligation due under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment in Cash on the Effective Date, by the Post-Effective Date, as an Administrative Claim, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

At least fourteen (14) days before the Confirmation Hearing, the Debtor shall cause notice of proposed Cure Obligations to be sent to applicable counterparties to the Executory Contracts and Unexpired Leases. Any objection by such counterparty must be filed, served, and actually received by the Debtor not later than ten (10) days after service of notice of the Debtor's proposed assumption and associated Cure Obligation. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed cure amount will be deemed to have assented to such Cure Obligation.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Obligations, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of such assumption. **Any prepetition default amount set forth in the Schedules and/or any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged,**

without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

### 9.5. *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or unexpired Lease or that the Debtors' Estates have any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Post-Effective Date Debtors, shall have 60 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

## SECTION 10.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE.

### 10.1  *Conditions Precedent to the Confirmation Hearing*

The Bankruptcy Court has approved the Bid Procedures which shall provide that the Auction take place at least three (3) days prior to the objection deadline for the Confirmation Hearing.

### 10.2  *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(a)    the Bankruptcy Court shall have entered the Confirmation Order, the Confirmation Date shall have occurred and the Confirmation Order shall not be subject to any stay;

(b)    the 26 Bowery Closing Date shall have occurred;

(c)    the 2 Bowery Closing Date shall have occurred;

(d)    all actions, documents and agreements necessary to implement and consummate the Plan, including, without limitation, entry into the documents contained in the Plan Supplement required to be executed prior to the Confirmation Date, each in form and substance reasonably satisfactory to the Debtors, 26 Bowery Purchaser, 2 Bowery Purchaser, and the transactions and other

4853-3503-8512, v. 9

matters contemplated thereby, shall have been effected or executed;

(e)     all governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan, if any, shall be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions;

(f)     all documents and agreements necessary to implement the Plan shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements; and

(g)     all documents and agreements necessary to implement the Plan shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

10.3.   *Waiver of Conditions Precedent.*

Each of the conditions precedent to the Effective Date in Section 10.2 other than the condition set forth in section 10.2(a) may be waived in writing by the Debtors.

10.4.   *Effect of Failure of Conditions to Effective Date.*

If the Confirmation Order is vacated due to a failure of a condition to the Effective Date to occur, (i) no distributions under the Plan shall be made; (ii) the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date ever occurred; and (iii) all monies contributed to the Plan Fund by Debtors shall be returned to Debtors within three (3) Business Days of the Confirmation Order being vacated.

## SECTION 11.    EFFECT OF CONFIRMATION.

11.1.   *Vesting of Assets.*

4853-3503-8512, v. 9

On the 26 Bowery Closing Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, and as set forth in the 26 Bowery Purchase Agreement, all property of the 26 Bowery Estate shall vest in the 26 Bowery Purchaser free and clear of all Claims, liens, encumbrances, charges and other interests, except as provided pursuant to this Plan and the Confirmation Order.

On the 2 Bowery Closing Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, and as set forth in the 2 Bowery Purchase Agreement, all property of the 2 Bowery Estate shall vest in the 2 Bowery Purchaser free and clear of all Claims, liens, encumbrances, charges and other interests, except as provided pursuant to this Plan and the Confirmation Order.

11.2. *Release of Liens.*

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, at the Closing, all mortgages, deeds of trust, Liens, pledges, or other security interests against the 26 Bowery Property shall be fully released, settled, and compromised, provided however, that the Lien securing the DIP Claim and Double Bowery Claim shall not be deemed released until the DIP Claim and Double Bowery Claim has been paid from the 26 Bowery Sale Proceeds and/or 2 Bowery Sale Proceeds in accordance with the terms of this Plan; provided, however, the liens securing the DIP Claim and Double Bowery Claim may survive and may be assigned to a lender to the 26 Bowery Purchaser. The transfer of the 26 Bowery Property at the 26 Bowery Closing will not release any of the Guarantors' obligations under the Guaranty.

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, at the Closing, all mortgages, deeds of trust, Liens, pledges, or other security interests against the 2 Bowery Property shall be fully released, settled, and compromised, provided however, that the Lien securing the DIP Claim and Double Bowery Claim shall not be deemed released until the DIP Claim and Double Bowery Claim has been paid from the 26 Bowery Sale Proceeds and/or 2 Bowery Sale Proceeds in accordance with the terms of this Plan; provided, however, the liens securing the DIP Claim and Double Bowery Claim may survive and may be assigned to a lender to the 2 Bowery Purchaser. The transfer of the 2 Bowery Property at the 2 Bowery Closing will not release any of the Guarantors' obligations under the Guaranty.

11.3. *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests

30

in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right for the Post-Effective Date Debtors to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

11.4.  *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtors, and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

11.5.  *Term of Injunctions or Stays*.

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

11.6.  *Plan Injunction.*

Except (i) as otherwise provided under Final Order entered by the Bankruptcy Court or (ii) with respect to the Debtors' obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any Claim held against the Debtors as of the date of entry of the Confirmation Order (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Debtors, from the 26 Bowery Property or 2 Bowery Property, or from property of the Estates that has been or is to be distributed under the Plan, and (ii) the creation, perfection or enforcement of any lien or encumbrance against the 26 Bowery Property or 2 Bowery Property and any property of the Estates that has been or is to be, distributed under the Plan.  Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act to collect, recover or offset from the Debtors, from the 26 Bowery Property or 2 Bowery Property, or from property of the Estates, any claim, any obligation or debt that was held against the Debtors by any person or entity as of the Confirmation Date except pursuant to the terms of this Plan. The

4853-3503-8512, v. 9

entry of the Confirmation Order shall permanently enjoin all Creditors, their successors and assigns, from enforcing or seeking to enforce any such Claims.

### 11.7.  *Limitation of Liability*

To the extent permitted under Section 1125(e) of the Bankruptcy Code, neither the Exculpated Parties  nor any of their respective officers, directors, or employees (acting in such capacity) nor any professional person employed by any of them, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement, the Plan Supplement or the  any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, provided that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement, except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts.   Nothing in this Section 11.8 shall limit the liability of the Debtors' professionals pursuant to Rule 1.8 (h)(1) of the New York State Rules of Professional Conduct. Nothing in the Plan or the confirmation order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtors or any of its respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns, nor shall anything in the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Debtors or any of its respective members, officers, directors, employees, attorneys, advisors, agents, representatives and assigns for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in this Plan exculpate Debtors or any of its respective members, officers, directors, employees, attorneys, advisors, agents, representatives and assigns from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority.

### 11.8  *Release*

Except as otherwise provided in the Plan, upon the Effective Date, in consideration of the Cash and other property to be distributed to or on behalf of the

4853-3503-8512, v. 9

holders of Claims and Interests under the Plan, the Plan shall be deemed to resolve all disputes and constitute a settlement and release, between and among the Debtors and Double Bowery on the one hand, and each Creditor and Interest Holder, on the other, from any claim or liability, whether legal, equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed, matured, unmatured, fixed or contingent, known or unknown, that the Debtors, their Creditors or Interest Holders ever had or now have through the Effective Date in connection with their Claim or Interest (including, without limitation, any claims the Debtors may assert on their own behalf or on behalf of Creditors or Interest Holders pursuant to sections 510 and 542 through 553 of the Bankruptcy Code, any claims Creditors or Interest Holders may have asserted derivatively on behalf of the Debtors absent bankruptcy, any claims based on the conduct of the Debtors' business affairs prior or subsequent to the commencement of the Cases or any claims based on the negotiation, submission and confirmation of the Plan).

11.9.  *Solicitation of the Plan.*

As of and subject to the occurrence of the Confirmation Date: (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation.

11.10.  *Plan Supplement.*

The Plan Supplement, if any, shall be filed with the Clerk of the Bankruptcy Court by no later than three (3) Business Days prior to the deadline to vote on confirmation of the Plan. Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.

## SECTION 12.     RETENTION OF JURISDICTION.

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)     to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts or unexpired Leases and the allowance, classification, priority, compromise, estimation or payment of Claims resulting there from;

4853-3503-8512, v. 9

(b)     to determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(c)     to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d)     to consider Claims or the allowance, classification, priority, compromise, estimation or payment of any Claim;

(e)     to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(f)     to adjudicate any dispute related to the 26 Bowery Sale Transaction or 2 Bowery Sale Transaction;

(g)     to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the Consummation, implementation or enforcement of the Plan, including the Confirmation Order, or any other order of the Bankruptcy Court;

(h)     to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)     to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred before the Confirmation Date;

(j)     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the 26 Bowery Purchase Agreement, the 2 Bowery Purchase Agreement, the Confirmation Order or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)     to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following Consummation;

(l)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)    to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations of the Debtors' tax liability under section 505(b) of the Bankruptcy Code);

(n)     to adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(o)     to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(p)     to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(q)     to enter a final decree closing the Chapter 11 Cases;

(r)     to enforce all orders previously entered by the Bankruptcy Court;

(s)     to recover all assets of the Debtors and property of the Debtors' Estates, wherever located; and

(t)     to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

## SECTION 13.        MISCELLANEOUS PROVISIONS.

### 13.1.  *Payment of Statutory Fees.*

On the Effective Date and thereafter as may be required, the Debtors shall pay all fees incurred pursuant to § 1930 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for the Chapter 11 Cases; provided, however, that after the Effective Date such fees shall only be payable with respect to the Chapter 11 Cases until such time as a final decree is entered closing the Chapter 11 Cases, a Final Order converting such case to a case under chapter 7 of the Bankruptcy Code is entered or a Final Order dismissing the Chapter 11 Cases is entered.

### 13.2.  *Substantial Consummation*.

35

On the 26 Bowery Closing Date or 2 Bowery Closing Date, whichever occurs later, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 13.3. *Amendments.*

(a)    *Plan Modifications.* The Plan may be amended, modified or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code. In addition, after the Confirmation Date, the Post-Effective Date Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

(b)    *Other Amendments.* Before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

### 13.4. *Revocation or Withdrawal of the Plan.*

The Debtors reserve the right to revoke or withdraw the Plan, prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or unexpired Leases effected by the Plan, and any document or executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors, the Debtors' Estates, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Debtors' Estates, or any other Entity.

### 13.5. *Severability of Plan Provisions Upon Confirmation*.

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration

or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Post-Effective Date Debtors (as the case may be); and (3) non-severable and mutually dependent.

13.6.   *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

13.7.   *Time.*

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

13.8.   *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

13.9.   *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the 26 Bowery Purchaser, the 2 Bowery Purchaser, the holders of Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns.

13.10. *Successor and Assigns*.

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or permitted assign, if any, of each Entity.

13.11. *Entire Agreement*.

On the Effective Date, the Plan, the Plan Supplement, the 26 Bowery Purchase Agreement and the 2 Bowery Purchase Agreement, as applicable, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

13.12. *Notices.*

All notices, requests and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(i) if to the Debtors
RK Consultants
1178 Broadway
3rd Floor, #1505
New York, New York 10001
Attn:  Brian Ryniker

- and –

Leech Tishman Robinson Brog, PLLC
875 Third Avenue, 9th Floor
New York, New York 10022
Telephone: (212) 603-6300
Facsimile: (212) 956-2164
Attn: Fred B. Ringel., Esq.

(ii) if to Double Bowery
Morrison Cohen LLP
909 Third Avenue, 27th Floor
New York, New York 10022
Attn:  Joseph T. Moldovan, Esq.
       David J. Kozlowski, Esq.

4853-3503-8512, v. 9

After the Effective Date, the Debtors shall have the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, that they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

*[signatures on following page]*

4853-3503-8512, v. 9

Dated:  September 10, 2024
        New York, New York

| | |
|---|---|
| **26 BOWERY LLC**<br>**BY:  RK CONSULTANTS, LLC,**<br>**INDEPENDENT MANAGER**<br><br>By:/s/ Brian Ryniker<br>Brian Ryniker<br>Member | **LEECH TISHMAN**<br>**ROBINSON BROG, PLLC**<br>**Attorneys for the Debtors**<br>One Dag Hammarskjöld Plaza<br>885 Second Avenue, 3rd Floor<br>New York, New York 10017<br>Tel. No. (212) 603-6300<br><br>By: /s/ Fred B. Ringel<br>       Fred B. Ringel, Esq. |
| **2 BOWERY HOLDING LLC**<br>**BY:  RK CONSULTANTS, LLC,**<br>**INDEPENDENT MANAGER**<br><br>By:/s/ Brian Ryniker<br>Brian Ryniker<br>Member | **MORRISON COHEN LLP**<br>**Attorneys for Double Bowery**<br>**Funding LLC**<br>909 Third Avenue, 27th Floor<br>New York, New York 10022<br>Tel. No. (212) 753-8600<br><br>By:/s/ David J. Kozlowski<br>Joseph T. Moldovan, Esq.<br>David J. Kozlowski, Esq. |
| **DOUBLE BOWERY FUNDING LLC**<br><br><br>By:/s/ Mark Levin<br>Mark Levin<br>Authorized Signatory | |

4853-3503-8512, v. 9