UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

FOR PUBLICATION

In re:

    26 BOWERY LLC,

                  Debtor.

Case No. 22-10412 (MG)

In re:

    2 BOWERY HOLDING LLC,

                  Debtor.

Case No. 22-10413 (MG)

**MEMORANDUM OPINION AND ORDER HOLDING 2 BOWERY LLC IN CIVIL CONTEMPT AND IMPOSING SANCTIONS**

*A P P E A R A N C E S:*

RUBIN LLC
*Counsel for Northgate Real Estate Group, LLC*
11 Broadway, Suite 715
New York, New York 10004
By:   Paul A. Rubin, Esq.
        Hanh V. Huynh, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

      Pending before the Court is the uncontested *Motion for Entry of an Order Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rules 9014 and 9020 (I) Finding the Buyer in Civil Contempt for Its Failure to Comply with the Court's Contempt Order, (II) Compelling the Buyer to Immediately Pay to Northgate the Buyer's Premium, and (III) Imposing Sanctions Against the Buyer* (the "Motion," ECF Doc. # 564) submitted by Northgate Real Estate Group, LLC ("Northgate").

1

Northgate seeks entry of an order (i) finding 2 Bowery LLC (the "Buyer") in civil contempt for its failure to comply with the Court's *Memorandum Opinion and Order Granting Motion to Hold 2 Bowery LLC in Civil Contempt* (the "Contempt Order," ECF Doc. # 561), which ordered the Buyer to pay Northgate's commission on the sale of 2 Bowery, New York, New York 10013 as a buyer's premium in the amount of $220,000 (the "Buyer's Premium") within seven (7) days of entry of the Contempt Order; (ii) compelling the Buyer to immediately pay to Northgate the Buyer's Premium; and (iii) imposing sanctions against the Buyer, including but not limited to awarding Northgate its attorney's fees and costs it was forced to incur to bring the Motion, and fining the Buyer $1,000 per day of non-compliance.

For the reasons explained below, the Court **GRANTS** the Motion to hold the Buyer in Civil Contempt, and **GRANTS** the request to compel the Buyer to pay Northgate the Buyer's Premium, attorney's fees and expenses, and monetary sanctions.

## I. BACKGROUND

A. The Chapter 11 Proceedings and Sale of the 2 Bowery Property

On March 31, 2022 (the "Petition Date"), each of 26 Bowery LLC ("26 Bowery") and 2 Bowery Holding LLC ("2 Bowery," collectively, the "Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code. (Motion ¶ 3.) 26 Bowery was the owner of 26 Bowery, New York, New York (the "26 Bowery Property"). (Contempt Order, at 2). 2 Bowery was the owner of 2 Bowery, New York, New York (the "2 Bowery Property," and together with the 26 Bowery Property, the "Properties"). (*Id.*)

The Buyer's obligation to pay the Buyer's Premium was established through a series of orders entered during the Debtors' Chapter 11 cases. On March 21, 2024, the Court authorized the Debtors' retention of Northgate as their real estate advisor, governed by the retention

2

agreement between the Debtors and Northgate (the "Retention Order," ECF Doc. # 417). (*Id.*) The Retention Order authorizes Northgate's commission to be 4% of the gross purchase price for the Properties. (*Id.*) In September 2024, the Court authorized the bidding procedures for the properties, which designated the Buyer as the "Stalking Horse" for the 2 Bowery Property. (*Id.*) On November 13, 2024, the Court entered an order approving the Debtors' plan of reorganization which provided for the sale of the 2 Bowery Property to the Buyer. (*Id.*)

The sale of the 2 Bowery Property to the Buyer closed on February 28, 2025, and the Court subsequently entered a fee approval order (the "Fee Approval Order," ECF Doc. # 530), instructing the Buyer to pay Northgate "the buyer's premium in the amount of $220,000 on account of a 4% commission of the $5,500,000 purchase price for the 2 Bowery Property within five (5) days after entry of this order." (*Id.* at 2-3 (quoting the Fee Approval Order at 1)).

B.  Northgate's Attempts to Collect and the First Contempt Motion

Despite the Court's Fee Approval Order, the Buyer did not pay the Buyer's Premium to Northgate within five days of the Order. (*Id.*) Northgate sent the Buyer two emails and a formal request for payment, none of which received a response. (Motion ¶¶ 11-13). On June 16, 2025, Northgate filed its *Motion for Entry of an Order Pursuant to Bankruptcy Rules 9014 and 9020 (I) Finding the Buyer in Civil Contempt for its Failure to Comply with the Court's Fee Approval Order; (II) Compelling the Buyer to Immediately Pay to Northgate the Buyer's Premium; and (III) Awarding Northgate Attorney's Fees and Costs for this Motion* (the "First Contempt Motion," ECF Doc. # 550). (*Id.* ¶ 14). The Buyer and its counsel were properly served with the First Contempt Motion, but they filed they filed no objection or response. (*Id.*)

Following a hearing on July 31, 2025, the Court granted the First Contempt Motion in its entirety. (*Id.* ¶ 15.) In the First Contempt Order, the Court ordered the Buyer to pay the due

3

amount within seven days of the Opinion's date (by August 7, 2025). (Contempt Order at 6-7). Non-compliance would lead to additional civil contempt sanctions. (*Id.* at 7.) Furthermore, the Court ordered that Northgate could recover its legal fees related to the First Contempt Motion, subject to the filing of a fee application and the Buyer's right to object. (*Id.*) This application was filed on August 1, 2025, and sought allowance of $6,417.50 in fees and $258.93 in expenses incurred by Northgate in connection with the First Contempt Motion. (Motion ¶ 18). The fee application was served on counsel for the Buyer and the buyer did not object. (*Id.*)

    C.  <u>The Second Contempt Motion</u>

On August 8, 2025, following the August 7 deadline under the Contempt Order, Northgate emailed the Buyer's counsel, Mr. Kuper, to advise him that his client had not paid the Buyer's Premium as directed by the Court, and demanded payment forthwith. (*Id.* ¶ 19.) Mr. Kuper did not respond to this email. (*Id.*) Northgate's counsel followed up with Mr. Kuper via emails on August 18th and 25th, demanding payment, but Mr. Kuper ignored both demands. (*Id.*) Subsequently on September 3, 2025, a formal request letter demanding payment was sent by FedEx to Mr. Kuper. (*Id.* ¶ 20.) To date, Northgate has received no response. (*Id.*)

As a result of the Buyer's failure to pay the Buyer's Premium, Northgate filed the Motion seeking to hold the Buyer in contempt a second time. Northgate contends that the Buyer should be held in civil contempt because has made no attempt to comply with a clear and unambiguous Court order. (*Id.* ¶¶ 24-27.)

## II.    <u>LEGAL STANDARD</u>

    A.  <u>Contempt Motion</u>

Bankruptcy Code § 105 gives courts the authority to hold a party in civil contempt in order to carry out the provisions of the title. "[C]ourts have inherent power to enforce

4

compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966); *Spallone v. United States*, 493 U.S. 265, 276 (1990); *In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. 527, 533 (Bankr. S.D.N.Y. 2007). "The power to punish for contempt is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts and, consequently, to the due administration of justice." *Ex parte Robinson*, 86 U.S. 505, 510 (1873).

Further, it is well settled that bankruptcy courts possess the power to enter civil contempt orders. *In re MF Glob. Holdings Ltd.*, 562 B.R. 41, 52 (Bankr. S.D.N.Y. 2017); *see In re Chateaugay Corp.*, 920 F.2d 183, 187 (2d Cir. 1990); *see also In re Rainbow Mag., Inc.*, 77 F.3d 278, 284-85 (9th Cir. 1996); *In re Power Recovery Sys., Inc.*, 950 F.2d 798, 802 (1st Cir.1991) ("Bankruptcy Rule 9020(b) specifically provides that a bankruptcy court may issue an order of contempt if proper notice of procedures are given."); *In re Chief Exec. Officer's Clubs, Inc.*, 359 B.R. at 534 ("Indeed, it is well established that bankruptcy courts have power to enter civil contempt orders."). A court may hold a party in contempt to "compel a reluctant party to do what a court requires of him." *In re MF Glob. Holdings Ltd.*, 562 B.R. at 52; *see Badgley v. Santacroce*, 800 F.2d 33, 36 (2d Cir. 1986); *see also Shillitani*, 384 U.S. at 368 (explaining that entering a civil contempt order compels the contemnor to remedy their errors for the benefit of other parties involved). Moreover, a court may appropriately compel a party to enforce an order involving payment to another party without being considered a "'money judgment'" for the purposes of Federal Civil Rule 69(a)(1). *In re Alexander*, Case No. 24-35982 (KYP) at *3 (Bankr. S.D.N.Y. March 18, 2025); *see Collect Access, LLC v. Hernandez (In re Hernandez)*, BAP No. SC-13-1301, at *6 (B.A.P. 9th Cir. Apr. 4, 2014) (distinguishing a "judgment" under Federal Bankruptcy Rules 9001(b)(7) and 9002(e) from a "money judgment" under Federal Civil

5

Rule 69(a)(1) and asserting that a final order awarding monetary sanctions is not a "money judgment" which would require a writ of execution to enforce).

A court may hold a party in civil contempt when three elements are met: (1) the underlying order is "clear and unambiguous," (2) the "proof of non-compliance is 'clear and convincing,'" and (3) the contemnor has "not been 'reasonably diligent and energetic in attempting to accomplish what was ordered.'" *EEOC v. Loc. 580*, 925 F.2d 588, 594 (2d Cir. 1991) (quoting *EEOC v. Loc. 638 ... Loc. 28 of the Sheet Metal Workers' Int'l Ass'n*, 753 F.2d 1172, 1178 (2d Cir.1985)); *see also King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995); *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d. Cir. 1995); *Monsanto Co. v. Haskel Trading, Inc.*, 13 F. Supp. 2d 349, 363 (E.D.N.Y. 1998); *In re MF Glob. Holdings Ltd.*, 562 B.R. at 52–53. "Clear and unambiguous" means that the order must be issued in such a manner that the enjoined party is able to "ascertain from the four corners of the order precisely what acts are forbidden." *Monsanto Co.*, 13 F. Supp. 2d at 363 (*citing Drywall Tapers and Pointers of Greater N.Y., Loc. 1974 of I.B.P.A.T. AFL-CIO v. Loc. 530 of Operative Plasterers and Cement Masons Intern. Ass'n*, 889 F.2d 389, 395 (2d Cir. 1989)); *see also New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351–52 (2d Cir.1989) (finding that the order was sufficiently specific and clear as to what acts were proscribed to a party in order hold them in contempt).

Upon a *prima facie* showing of a party's failure to comply with an order, the contemnor must present evidence for their inability to comply with an order. *In re Chief Exec. Officer's Clubs, Inc., 359 B.R. at 536*. Silence on the part of the contemnor weighs against their noncompliance with an order. *Maggio v. Zeitz*, 333 U.S. 56, 75–76 (1948); *see also Huber*, 51 F.3d at 10.

B. <u>Civil Contempt Damages</u>

6

A civil contempt sanction must only be compensatory or coercive and may not be punitive. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947); *Hess v. N.J. Transit Rail Operations, Inc.*, 846 F.2d 114, 115 (2d Cir. 1988); *Wilson v. Arbors of Cent. Park ICG, LLC* (*In re Wilson*), 610 B.R. 255, 270-71 (Bankr. N.D. Tex. 2019). Punitive damage is a characteristic of criminal contempt, which is of a distinct character and requires special consideration. *See, e.g.*, *In re Power Recovery Sys., Inc.*, 950 F.2d at 802 (holding that "[i]t is well-settled law that bankruptcy courts are vested with contempt power" in a civil contempt case involving only compensatory or coercive sanctions); *In re Walters*, 868 F.2d 665, 669 (4th Cir. 1989) (upholding a bankruptcy court's contempt finding and order directing a debtor's attorney to return excess fees not previously authorized by the court based on Section 105.) Neither Section 105 nor the Bankruptcy Court's inherent authority authorize the imposition of a punitive sanction. *See Knupfer v. Lindblade* (*In re Dyer*), 322 F.3d 1178, 1192-93 (9th Cir. 2003); *PHH Mortg. Corp. v. Sensenich (In re Gravel)*, 6 F.4th 503, 520-21 (2d Cir. 2021).

In determining whether a coercive civil contempt sanction is appropriate, courts should consider the "character and magnitude of the harm" threatened by continued noncompliance, the "probable effectiveness" of the sanction in securing compliance, and the contemnor's financial resources and the seriousness of the burden imposed. *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982) (*quoting United States v. UMW*, 330 U.S. 258, 304 (1947); *Powell v. Ward*, 643 F.2d 924, 933 (2d Cir. 1981)). Ultimately, however, the overriding consideration is whether the coercive fine was *reasonably set* in relation to the facts and was not *arbitrary*. *Id.* (emphasis added).

### III.     DISCUSSION

A. The Court Orders Were Clear and Unambiguous

7

The Court has issued a total of four separate and consistent orders establishing and enforcing the fees to be paid to Northgate by the Buyer. (Motion ¶ 24). In the Contempt Order, this Court ordered that "[t]he Buyer must pay the amount due within seven (7) days of the date of this Opinion. Failure to pay the sum due will result in additional civil contempt sanctions." (Contempt Order at 7). This order has been consistent with the Fee Approval Order, the Retention Agreement, Bid Procedures and the Agreement. (*Id.*).

B. The Proof of the Buyer's Noncompliance Is Clear and Convincing

The Contempt Order mandated that the Buyer pay the Buyer's Premium to Northgate by August 7, 2025. (*Id.* ¶ 26). Northgate's allegation that the Premium has yet to be paid is uncontested by the Buyer. The Buyer was properly served with the First Contempt Motion and the underlying evidence of its payment obligation but chose to file neither an objection nor any other response. (*Id.* ¶ 14).

C. The Buyer Has Not Diligently Attempted to Comply with the Contempt Order in a Reasonable Manner

The Buyer has made no attempt whatsoever to comply with the Contempt Order. Northgate's counsel sent three emails and a formal letter to the Buyer's counsel regarding the Buyer's payment obligation but received no response. (*Id.* ¶ 27). Neither Northgate nor its counsel have heard anything from the Buyer or its counsel since August 8, 2025. (*Id.*) All four of the Court's Orders, along with wire instructions for Northgate's account, were properly served on the Buyer. (*Id.*) Northgate has afforded the Buyer every opportunity to comply with the Contempt Order, but the Buyer has chosen to ignore its obligation to pay the Buyer's Premium. (*Id.*) There is no dispute whether the Buyer has attempted to comply with the Contempt Order.

For these reasons, the Court **GRANTS** Northgate's motion to hold the Buyer in civil contempt.

D. The Requested Sanctions Are Appropriate as Each Is Either Compensatory or Coercive

The reliefs sought by Northgate fall within the established bounds of civil contempt authority. The request for the $6,417.50 in fees and $258.93 in expenses, along with additional fees and expenses incurred for the current motion, is remedial; these amounts are intended solely to compensate Northgate for the legal costs directly caused by the Buyer's continued non-compliance with the Court's orders.

The request for a civil contempt sanction of $1,000 per day is coercive, not punitive, in nature. The sanction is justified by the character and magnitude of the harm threatened by continued noncompliance, as the Buyer has demonstrated **no effort** to pay the Buyer's Premium despite the Court's repeated orders. While the Court cannot definitively ascertain whether this specific figure is within the Buyer's financial capacity, it is ultimately reasonable given the egregiousness of the action. Thus, this sanction is a proper exercise of this Court's power.

Therefore, the Court **GRANTS** the request to compel the Buyer to pay Northgate the Buyer's Premium, attorney's fees and expenses, and monetary sanctions.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Northgate's Motion (i) finding the Buyer in civil contempt, (ii) compelling immediate payment of the Buyer's Premium, and (iii) imposing the requested remedial and coercive sanctions.

**IT IS SO ORDERED.**

DATED:    October 21, 2025

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge